UNITED STATES of America, Plaintiff-Appellee,

v.

Barbara GOTTESMAN, Defendant-Appellant.

No. 81–5663.

United States Court of Appeals, Eleventh Circuit.

Feb. 16, 1984.

Rehearing and Rehearing En Banc Denied March 26, 1984.

Henry J. Boitel, Rockville Centre, N.Y., for defendant-appellant.

Gloria C. Phares, Dep. Justice, Washington, D.C., for plaintiff-appellee.

Before HENDERSON and HATCHETT, Circuit Judges, and JONES, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

Following a jury trial in the United States District Court for the Southern District of Florida, the appellant Barbara Gottesman was convicted on one count of racketeering, 18 U.S.C. § 1962(c) (Count I), one count of criminal copyright infringement, 17 U.S.C. § 506(a) (Count II), and two counts of interstate transportation of stolen property, 18 U.S.C. § 2314 (Counts III and IV). She was sentenced to a concurrent eighteen-month term of imprisonment on each count, except that the sentence on one count of interstate transportation of stolen property was suspended and she was placed on probation for twenty-four months.

Gottesman's conviction came in the wake of an undercover investigation of the national pornography industry conducted in 1977 in Miami by the Federal Bureau of Investigation (FBI). During this investigation, two FBI agents established contact with Gottesman and her husband Rubin who owned a California company that engaged in the business of distributing pornographic films. The agents arranged by phone and by meetings with the Gottesmans to buy a number of pirated videotape cassettes of copyrighted motion pictures, as well as copies made from them. Those tapes were delivered to the agents by the appellant's husband.

On appeal, Gottesman alleges that the indictment was defective in that (1) the counts charging interstate transportation of stolen property erroneously proceed upon the assumption that materials produced as a result of criminal copyright infringement constitute stolen property within the meaning of 18 U.S.C. § 2314, and (2) the criminal act on which the count of racketeering was predicated did not fall within the ambit of 18 U.S.C. § 1962. She also alleges that the evidence was insufficient to sustain her convictions on the various counts, and that she was deprived of a fair trial since she was not permitted to confront and cross-examine her husband even though incriminating recordings of statements made by him were admitted into evidence. Finally, she contends that the court erred in sentencing her to eighteen months imprisonment on the copyright infringement count because the maximum sentence allowed by law for a violation of 17 U.S.C. § 506 is twelve months.

We affirm the judgment of the district court and remand to the district court solely for the purpose of modification of the sentence on the criminal copyright infringement charge contained in Count II of the indictment.

## I.

Gottesman contends that transportation of unauthorized video tape cassettes of copyrighted movies does not constitute an offense under the National Stolen Property Act, 18 U.S.C. § 2314. In particular, she

maintains that the property in issue was not the video tape cassettes, but only the intangible magnetic signals impressed upon the tapes, and that such intangibles cannot constitute "goods, wares, and merchandise," nor can they be acquired by theft, conversion or fraud within the meaning of 18 U.S.C. § 2314. This court has already rejected this argument in the appeal of the prior conviction of the appellant's husband. *United States v. Gottesman,* 685 F.2d 1387 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1256–57, 75 L.Ed.2d 484 (1983). In that case, we adopted the stance taken by the Ninth Circuit in *United States v. Drebin,* 557 F.2d 1316, 1332 (9th Cir.1977), *cert. denied,* 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978), in which the court dismissed as "both illogical and contrary to law" the notion that the strictures of section 2314 apply only to rights in tangible items, rather than to rights in intangible property such as copyrights. We hold that the intangible idea protected by the copyright is effectively made tangible by its embodiment upon the tapes and therefore constitutes "goods, wares, or merchandise" within the meaning of section 2314.[1]

Gottesman also urges that the Copyright Act of 1976, 17 U.S.C. § 506(a) and its amendments, the Piracy and Counterfeiting Amendments of 1982, 18 U.S.C. § 2319, preclude the application of section 2314 to cases of willful copyright infringement. She asserts that the legislative history of the copyright statute compels the conclusion that Congress intended it to be the exclusive penal provision dealing with copyright infringement.

We are not persuaded by this argument. Gottesman cites nothing from the legislative history of the Copyright Act of 1976 to suggest that Congress intended 17 U.S.C. § 506(a) to replace 18 U.S.C. § 2314 in this area, and absent such an indication, we will not presume that result. "It is a cardinal principle of construction that repeals by implication are not favored. When there are two acts upon the same subject the rule is to give effect to both if possible . . . The intention of the legislature to repeal 'must be clear and manifest.'" *United States v. Borden,* 308 U.S. 188, 198–99, 60 S.Ct. 182, 188–89, 84 L.Ed. 181 (1939), quoting *Red Rock v. Henry,* 106 U.S. 596, 601–02, 1 S.Ct. 434, 438–39, 24 L.Ed. 251 (1883).[2]

We also note that the enactment of the 1982 amendments, 18 U.S.C. § 2319, which increased the penalties for copyright infringement, evidences the intent of Congress that section 506(a) is not meant to be the sole statute under which the government may prosecute criminal copyright infringement. Before the 1982 amendments, the criminal offense of copyright infringement and the penalties resulting from a conviction thereof were set out in 17 U.S.C. § 506(a). The formal effect of the 1982 amendments was to leave the statement of the offense in 17 U.S.C. § 506(a), but to move the penalty provisions to 18 U.S.C. § 2319. The language of 18 U.S.C. § 2319(a) is explicit that its penalties are not exclusive:

---

1. Gottesman relies on *United States v. Smith,* 686 F.2d 234 (5th Cir.1982), in which the Fifth Circuit Court of Appeals held that "off the air" taping of broadcast signals of copyrighted material did not violate 18 U.S.C. 2314 since no tangible item had been implicated. This reliance is misplaced. The *Smith* court explicitly distinguished cases such as *United States v. Drebin,* 557 F.2d 1316 (9th Cir.1977), on their facts because, unlike taping "off the air," original works had been stolen and used to make copies. *Smith* is therefore of no help to Gottesman who also utilized tangible copyrighted material to make unauthorized copies.

2. The goals of 17 U.S.C. § 506(a) and 18 U.S.C. § 2314 are clearly distinct. The copyright statute is designed to protect copyright holders from willful infringement of their copyrights. The stolen property act seeks to prevent the use of interstate commerce to transport stolen or fraudulently acquired property. *See United States v. McClain,* 545 F.2d 988 (5th Cir.1977); *Lyda v. United States,* 279 F.2d 461, 463–65 (5th Cir.1960). Applied to situations such as this, they complement one another. Under settled law, where a single act or transaction gives rise to distinct offenses under separate statutes, a prosecutor may at his discretion decide which statute or statutes to invoke in the indictment. *See, e.g., Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *United States v. Drebin,* 557 F.2d 1316 (9th Cir.1977).

Whoever violates section 506(a) . . . shall be punished as provided in subsection (b) of this section and *such penalties shall be in addition to any other provisions of title 17 or any other law.*

(Emphasis added.) This language—permitting the additional imposition of penalties under any other applicable statute—effectively ratifies the earlier practice of prosecuting willful copyright infringers under 18 U.S.C. § 2314.

Gottesman also attacks her conviction on the interstate transportation of stolen property counts by alleging that the government failed to prove that the value of each of the two shipments of tapes aggregated $5,000.00 as required by 18 U.S.C. § 2314. She claims (1) that the government offered no proof of the value of the tapes, and (2) that when the appropriate deductions are made to account for the value of non-stolen tangible tapes, the total value of at least the first shipment falls below the value of $5,000.00.

▇▇ We are satisfied that the government presented sufficient proof as to the value of the tapes. The government used the "thieves market" approach to determine the value of the stolen property. Under this method, the value of the stolen property is determined by the sale price paid by the agents for each shipment, less appropriate deductions for non-stolen material contained in each shipment, i.e., the value of the non-stolen tangible tapes. This method of valuation is appropriate in situations where stolen intangible property has been affixed to legitimately acquired tangible property, inasmuch as it takes into account the "true" retail value of the tapes—that is, the value Gottesman could have obtained in the market for which the products were targeted—as well as the legitimate costs associated with the enterprise. *See United States v. Berkwitt,* 619 F.2d 649, 656–658 (7th Cir.1980).

The evidence provided ample proof of value in excess of the jurisdictional amount for each shipment. The government proved the total price the agents paid for the cassettes in each shipment, as well as the resale value of used video cassette tapes. There was additional evidence from which the jury legitimately could have determined the "used" character of the tapes. Calculations based upon the figures in evidence result in valuation of each tape shipment in an amount which exceeds the jurisdictional requisite.

## II.

Gottesman attacks her conviction on the count of racketeering on the ground that the government failed to allege and prove the basic elements—an enterprise and a pattern of racketeering—under 18 U.S.C. § 1962(c), the Racketeer Influenced and Corrupt Organizations Act (RICO). She argues that RICO was not intended to reach small business operations such as the National Film Company operated by her and her husband, but only large enterprises engaged in organized crime. She also insists that the legislation was not meant to reach "casual" and "relatively isolated" conduct that was "government-induced."

▇▇ We find no support for the theory that RICO's jurisdictional reach is limited to large enterprises engaged in organized crime. The RICO statute defines "enterprise" as "*any* individual, partnership, corporation . . . ," 18 U.S.C. § 1961(4), and "person" is similarly defined as "*any* individual or entity . . ." 18 U.S.C. § 1961(3) (emphasis added). "The words of the statute are general. They contain no restriction to particular persons." *United States v. Campanale,* 518 F.2d 352, 364 (9th Cir. 1975), *cert. denied,* 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976). In fact, this court has often affirmed RICO convictions of persons not specifically identified as members of an organized crime syndicate. *See, e.g., United States v. Hartley,* 678 F.2d 961 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983); *United States v. Martino,* 648 F.2d 367, 380 (5th Cir.1981), *cert. denied,* 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982).[3]

---

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

■ It is clear from the record that Gottesman and her husband had operated the National Film Company for many years as distributors of pornographic films, and that they used the auspices of that company to commit two acts of racketeering—the two 18 U.S.C. § 2314 violations. Such activity adequately fulfills the "enterprise" requirement of the RICO statute.

■ Gottesman's claim that a "pattern of racketeering activity" cannot be ascribed to a situation in which only two isolated sales occur is equally without merit. The RICO statute defines "racketeering activity" to include "any act which is indictable" under 18 U.S.C. § 2314, 18 U.S.C. § 1961(1), and a "pattern of racketeering activity" as "at least two acts of racketeering activity" that occur within ten years of each other, 18 U.S.C. § 1961(5). The two violations of which the government complains fit the plain language of the statute, despite Gottesman's characterizing them as "casual" and "isolated."

Gottesman's reference to the two sales as "government induced" does not strengthen her position. There is no claim of entrapment and no evidence that Gottesman and her husband were persuaded by the agents to make the sales.

### III.

■ Gottesman asserts that there is no evidence in the record to show that she knew that she was infringing the copyrights of the motion pictures described in the indictment. She maintains that her conviction rested solely on knowledge wrongly imputed to her because of her marital status. She therefore reasons that she cannot be held criminally liable for copyright infringement inasmuch as the government has not shown that she "willfully and for purposes of commercial advantage or private financial gain" participated in the infringement scheme. *See* 17 U.S.C. § 506.[4]

■ Our review of the trial record reveals ample evidence to support the finding that Gottesman had personal knowledge that the movies were pirated copies of the originals. Testimony indicates that Gottesman was present at a meeting during which her husband told FBI agents that he could not introduce them to the Gottesmans' source of pirated movies because of recent arrests for copyright violations, and that on that occasion she heard her husband caution the FBI agents to be careful in their dealings with the movies because there were no defenses to federal copyright laws. Significantly, it was at this meeting that Gottesman supplied the agents with lists of pirated movies that she and her husband had available for sale.

Gottesman's active complicity in the criminal copyright infringement scheme is further reflected in statements her husband made to agents indicating that she helped check copies for production defects before shipping them to the agents. Evidence also showed that she used coded lists when placing the agents' orders.

Finally, recordings introduced at trial make it clear that Gottesman was not a mere innocent bystander to her husband's activities. In speaking of a delayed shipment of pirated tapes, Gottesman told an agent that "ordinarily it's me who takes care of everything." Moreover, her participation in the operation was referred to when her husband told an agent, "Barbara says she won't order nothing 'til you get here." Later, in a conversation with her husband regarding her husband's plan to attend a business convention alone, Gottesman remarked "you aren't going alone . . . not with my money and my business," and "I'm not a wife; I'm a partner."

### IV.

During the presentation of the government's case, the district court admitted the

---

4. The appellant carries this contention to the extreme by urging that the entire indictment must fail if the evidence is insufficient as to her complicity in criminal copyright violations. Such an argument overlooks the fact that an individual can be guilty of transporting stolen copyrighted material without necessarily engaging in the acts of infringement, and that the two counts charging interstate transportation of stolen property constitute the predicate acts for the RICO count.

statements of her husband as the statements of a co-conspirator. The court determined, pursuant to *United States v. James,* 590 F.2d 575 (5th Cir.1979) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), that a preponderance of the evidence independent of her husband's statements demonstrated the existence of a conspiracy between Gottesman and her husband. Gottesman assigns as error the admission of these statements made out of her presence.

There is extensive independent evidence in the record which sustains the district court's finding of a conspiracy. As demonstrated above, Gottesman worked closely with her husband, and was present in May, 1978, when the agents visited to make arrangements for the purchase of movie cassettes and were advised of the legal risks. Gottesman herself provided the agents with lists of available movies, and represented that she took care of shipments. Furthermore, on February 27, 1979, she made clear her involvement with the business when she discussed duplication of video tapes, her ordering of a pirated movie and her status as a "partner" in the operation.

This evidence ultimately demonstrated Gottesman's full knowledge and active participation in the conspiracy. It was an adequate predicate for the admission of co-conspirator hearsay at trial. *See United States v. Cagnina,* 697 F.2d 915, 922 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 175, 78 L.Ed.2d 157 (1983).[5]

### V.

Gottesman attempted to call her husband as a witness in her defense. At a hearing out of the presence of the jury, Rubin Gottesman stated that if he were called to testify he would assert both the marital privilege and his fifth amendment right not to incriminate himself. After hearing the questions defense counsel intended to ask Gottesman, the district court sustained Gottesman's privilege. The court observed that Gottesman's prior conviction for the same offenses was on appeal and thus that any testimony he gave could be used in a potential retrial. The court also noted that if Gottesman's testimony differed from that in his own trial, he might be liable for perjury. Following this ruling, the court denied appellant's motion for an order requiring the government to grant her husband immunity. This denial constitutes one of the grounds for this appeal.

Both parties agree that the district court's ruling on the fifth amendment privilege comports with this court's decision in *United States v. Fortin,* 685 F.2d 1297 (11th Cir.1982). Gottesman only seeks a reconsideration of the *Fortin* decision within the context of this case. Such a request is more properly directed to the en banc court, not to this panel. *United States v. Adamson,* 665 F.2d 649, 656 (5th Cir. Unit B 1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983).[6]

The motion for an order requiring the government to grant immunity to her husband raises a more difficult issue. The defense offered to prove through Rubin Gottesman's testimony that the appellant did not participate in the acquisition of the infringing tapes and that Rubin actively concealed from her the knowledge that they had been created in violation of the copyright laws. Gottesman insists that such testimony could have created a reasonable doubt in the minds of jurors as to her guilt

---

**5.** Gottesman originally moved for a separate pretrial hearing pursuant to *United States v. James,* 590 F.2d 575 (5th Cir.1979) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), to determine the admissibility of the co-conspirator statements. There was no error in permitting the government to present its case subject to later tying it to the independent evidence. "Although there is a greater danger of error without [a prior hearing], this procedure is not mandated. If the risk is run and yet, at the end of the trial, the judge finds ... that a preponderance of the evidence proves the predicate facts, no error has occurred in the admission of the co-conspirator statements." *United States v. Ricks,* 639 F.2d 1305, 1310 (5th Cir.1981); *accord, United States v. Miller,* 664 F.2d 826, 828 (11th Cir.1981).

**6.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), this court adopted as binding precedent decisions of Unit B panels of the former Fifth Circuit.

and therefore asserts that the due process clause of the Constitution requires a grant of use immunity. Specifically, she cites *Government of Virgin Islands v. Smith,* 615 F.2d 964 (3d Cir.1980), for the proposition that where it is found that a potential defense witness can offer testimony that is clearly exculpatory and essential to the defense case, and the government has no strong interest in withholding use immunity, due process mandates the grant of immunity.[7]

 The former Fifth Circuit, having reviewed the various circuit opinions and conflicting policy arguments on this issue, has concluded that district courts may not grant immunity to a defense witness simply because that witness possesses essential exculpatory information unavailable from other sources. *United States v. Thevis,* 665 F.2d 616, 639 (5th Cir. Unit B 1982), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982).[8] We are bound by that decision, and therefore hold that the district court did not err in refusing to grant Gottesman's husband use immunity to testify in her behalf.[9]

### VI.

Gottesman finally claims that the eighteen-month sentence imposed on the criminal copyright infringement count exceeds the limit established by statute. Under the version of 17 U.S.C. § 506(a) effective at the time of Gottesman's offense, the maximum sentence for the first conviction of copyright infringement was twelve months.

For that reason, we vacate that sentence and remand to the district court for the imposition of a sentence on this count not to exceed one year.

We AFFIRM Gottesman's conviction on all counts, and REMAND the case to the district court for the sole purpose of modifying the sentence on the criminal copyright charge.

AFFIRMED in part, VACATED in part and REMANDED.

---

7. Our discussion here is limited to due process considerations which attach to the proposed judicial grant of use immunity. It is well settled in this circuit that a district court has no authority to grant statutory immunity under 18 U.S.C. § 6002 to a defense witness for the reason that such authority resides exclusively in the executive branch. *See, United States v. Herbst,* 641 F.2d 1161, 1168–69 (5th Cir.1981), *cert. denied,* 454 U.S. 851, 102 S.Ct. 292, 70 L.Ed.2d 141 (1981).

8. The *Thevis* court accepted the two major arguments against judicial grants of immunity that (1) the immunity decision would carry the courts into policy assessments which are the traditional domain of the executive branch, and (2) the immunity would be subject to the abuse

of cooperative perjury among codefendants and co-conspirators. 665 F.2d at 639.

9. We recognize that a compelling argument can be made for judicial grants of use immunity in extraordinary cases where prosecutorial misconduct has occurred in the handling of the immunity process. *See, e.g., United States v. Klauber,* 611 F.2d 512, 517–20 (4th Cir.1979) *cert. denied,* 446 U.S. 908, 100 S.Ct. 1835, 64 L.Ed.2d 261 (1980) (distinguishing abuse cases). However, inasmuch as we find no evidence of such misconduct in the present case, we decline to decide either (1) exactly what circumstances might constitute government abuse of the immunity process, or (2) whether a court may, in fact, grant immunity when it finds government abuse.