**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Arthur Blake MOORE, doing business as Sound Distributors, Inc., Charles Frederic Moss and Gary Fields, Defendants-Appellants.**

**Nos. 78–2461, 78–3020.**

United States Court of Appeals, Ninth Circuit.

Sept. 21, 1979.

---

Moss, and Gary Fields challenge their convictions for copyright infringement of sound recordings. Their primary contentions are that the evidence was insufficient to sustain their convictions and that the district court erroneously failed to apply the "first sale doctrine." We affirm the convictions.

The defendants were each charged in a ten-count information with copyright infringement of sound recordings, in violation of former 17 U.S.C. § 1(f) and 104(b).[1] The evidence at the defendant's jury trial showed that the defendants purchased large spools of eight-track recording tape, known as "pancakes," in response to the advertisement of other distributors in Billboard Magazine. Each pancake contained a series of pre-recorded song sequences; approximately twenty albums were recorded on each tape. Attached to the pancakes were labels that stated that the albums on the pancakes were "sound-alikes", i. e., recreations or imitations of the original as recorded by various well-known artists. The defendants would rewind and splice the pancakes into approximately twenty eight-track cartridges, and then wrap each cartridge in cellophane. They attached a label indicating that it was a recreation on each cartridge. Moss distributed the packaged tapes to retailers. Nine government witnesses testified that they had a long business relationship with Moss and had purchased tapes from him on numerous occa-

Richard A. Carlson, David Teske, Portland, Or., for defendants-appellants.

Jack C. Wong, Asst. U. S. Atty., Portland, Or., for plaintiff-appellee.

Before WRIGHT and TANG, Circuit Judges, and PALMIERI *, District Judge.

TANG, Circuit Judge:

These are consolidated appeals in which the defendants Arthur Moore, Charles

---

* Honorable Edmund L. Palmieri, Senior United States District Judge for the Southern District of New York, sitting by designation.

1. Under former 17 U.S.C. § 1(a) and (f):

Any person entitled thereto, upon complying with the provisions of this title, shall have the exclusive right:

(a) to print, reprint, publish, copy and vend the copyrighted work;

\* \* \* \* \* \*

(f) To reproduce and distribute to the public by sale or other transfer of ownership, or by rental, lease, or lending, reproductions of the copyrighted work if it be a sound recording: Provided, That the exclusive right of the owner of a copyright in a sound recording to reproduce it is limited to the right to duplicate the sound recording in a tangible form that directly or indirectly recaptures the actual sounds fixed in the recording: Provided further, That this right does not extend to the making or duplication of another sound recording that is an independent fixation of other sounds, even though such sounds imitate or simulate those in the copyrighted sound recording; or to reproductions made by transmitting organizations exclusively for their own use.

Former 17 U.S.C. § 104(b) provided:

Any person who willfully and for profit shall infringe any copyright provided by § 1(f) of this title, or who should knowingly and willfully aid or abet such infringement, shall be fined not more than $25,000.00 or imprisoned not more than one year, or both, for the first offense and shall be fined not more than $50,000.00 or imprisoned not more than two years, or both, for any subsequent offense.

sions. The jury found Moss and Moore guilty on all counts and Fields on the tenth count only.

## I

### First Sale Doctrine

The defendants first contend the trial court erred in not granting their motion for acquittal because the Government failed to prove the absence of a "first sale". They also argue that the district court erred in failing to instruct the jury on the "first sale doctrine."

■ The first sale doctrine provides that where a copyright owner parts with title to a particular copy of his copyrighted work, he divests himself of his exclusive right to vend that particular copy. *United States v. Wise*, 550 F.2d 1180, 1187 (9th Cir.), *cert. denied* 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290 (1977). *See* former 17 U.S.C. § 27.[2] Although the owner's other copyright rights remain intact (e. g., publishing or copying), the copyright owner has no right under the copyright statute to restrict subsequent sales or transfers of that copy. *Id. See United States v. Drebin*, 557 F.2d 1316 (9th Cir. 1977), *cert. denied* 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978).

■ In several recent cases, this court has considered the application of the first sale doctrine in the context of prosecutions for criminal infringement. *See United States v. Atherton*, 561 F.2d 747 (9th Cir. 1977); *United States v. Drebin*, 557 F.2d 1316 (9th Cir. 1977); *Wise, supra*. In each case, all involving the sale of copyrighted motion pictures, the court held that one of the elements that the Government must

prove in a criminal prosecution under § 104 is the absence of a first sale as to those copyrighted articles that the defendant is charged with infringing.[3] *Atherton*, 561 F.2d at 749; *Wise*, 550 F.2d at 1190.

■ In arguing that the Government failed to prove the absence of a first sale, the defendants contend that the Government must completely account for the distribution of the sound recordings to meet its burden. Presumably, the defendants would have the Government trace the distribution of each recording to its original source to ascertain whether it was the subject of a legitimate first sale. We think that the defendants misconceive the nature of the proof necessary to prove the absence of a first sale.

Sound recordings are not readily traced because of their wide distribution and the ease with which they can be reproduced. This difficulty should not be fatal to the Government's burden of proving the absence of a first sale. A pirated tape that is reproduced from the original recording without authorization is plainly not the subject of a first sale. Therefore, the Government can prove the absence of a first sale by showing that the tape in question was unauthorized, and it can establish this proof not only by evidence tracing the distribution of that tape but also by circumstantial evidence from which a jury could conclude beyond a reasonable doubt that the recording was never authorized and therefore never the subject of a first sale. *See United States v. Whetzel*, 191 U.S.App.D.C. 184, 188–189, 589 F.2d 707, 711–12 (D.C.Cir. 1978). In other words, evidence suggesting that the tapes had an illegitimate origin

---

**2.** The first sale doctrine, as codified in former 17 U.S.C. § 27, provided:

The copyright is distinct from the property in the material object copyrighted, and the sale or conveyance, by gift or otherwise, of the material object shall not of itself constitute a transfer of the copyright, nor shall the assignment of the copyright constitute a transfer of the title to the material object; but nothing in this title shall be deemed to forbid, prevent, or restrict the transfer of any copy of a copyrighted work the possession of which has been lawfully obtained.

**3.** The Government notes that we have never explicitly applied the first sale doctrine to sound recordings and, on this basis, argues that the doctrine is inapplicable. We entertain no doubt that the doctrine is applicable. *See United States v. Whetzel*, 191 U.S.App.D.C. 184, 589 F.2d 707 (1978). There is no logical reason not to apply the first sale doctrine to sound recordings simply because we have not had occasion to do so.

negates the possibility of a valid first sale as much as proof from tracing the distribution of the tape to its original source. *See id.*.

■ The kind of circumstantial evidence that will establish proof of the absence of a first sale is demonstrated in *United States v. Whetzel, supra.* In *Whetzel*, the labels on the tapes listing a manufacturer with a non-existent address, the low price of the tapes, the circumstances of the sale, and the complete absence of evidence that would suggest that the tapes were legitimate sufficiently proved the unauthorized nature of the tapes. *Id.* Here, the Government presented very similar evidence showing that the tapes sold by the defendants were unauthorized. The record shows that the defendants had no authority from any company to manufacture or distribute tapes. There was further testimony that no one had the authority to manufacture the whole tapes contained in the pancakes. The fact that the tapes were labeled and packaged by the defendants and that the price of the tapes was only about $1.00 also pointed to the illicit origin of the tapes. Additionally, an expert witness testified that the sound on the tapes sold by the defendants was inferior to that of the copies sold by the copyright holders, suggesting that the defendants' tapes were something other than legitimate copies. Finally, there was a total absence of evidence suggesting that the tapes were legitimate. In short, the Government's evidence, demonstrating the unauthorized origin of the tapes, necessarily established the absence of a first sale.

■ The defendants also contend that the district court erred by refusing to instruct the jury on the first sale doctrine. We agree that the district court erred. The absence of a first sale is an element of the Government's proof of § 104 infringement, *Atherton*, 561 F.2d at 749, and the court is required to instruct the jury as to the elements of the crime charged. *United States v. Valdez*, 594 F.2d 725, 729 (9th Cir. 1979); *United States v. Manufacturers' Association of Relocatable Building Industry*, 462 F.2d 49, 50 (9th Cir. 1972).

The failure to give a required instruction is reviewable under the harmless error standard. *Valdez*, 594 F.2d at 729. In the circumstances of this case, we find that the failure of the district court to give the required instructions was harmless beyond a reasonable doubt. By clear evidence, the Government proved the absence of a first sale. Further, as we discuss below, the Government presented substantial evidence to prove the other essential elements of the crime. Finally, we note that the court's instruction on infringement required that the jury find that the defendants "made unauthorized copies and distributed those copies." The jury found this fact to be true beyond a reasonable doubt.

## II

### Reproduction and Distribution

■ The defendants contend that the Government is required to prove that they reproduced *and* distributed the infringing sound recordings in order to establish that they violated 17 U.S.C. §§ 104(b) and 1(f). They argue that evidence of distribution alone is insufficient to convict them.

Section 104(b) prohibits a person from wilfully infringing for profit any copyright provided by § 1(f). Section 1(f) enumerates certain rights afforded the copyright owner, including the right "to reproduce and distribute to the public" reproductions of the copyrighted work. The defendant's contention that the government is required to prove both reproduction and distribution is grounded solely on the presence of the conjunctive "and" in § 1(f). Because the copyright holder has the exclusive right to reproduce and distribute, the defendants argue that "it is logical to infer that the infringer must also 'reproduce *and* distribute.'"

We do not find this argument persuasive. Section 104(b) does not explicitly or implicitly require proof of both reproduction and distribution. It only prohibits infringement of the rights specified in § 1(f). We have previously held that "it is clear that any act which is inconsistent with exclusive rights

of the copyright holder, as enumerated in § 1, constitutes infringement." *Wise,* 550 F.2d at 1186. It takes little imagination to see that either an act of reproduction or an act of distribution may interfere with the copyholder's rights and, thus, either may constitute infringement. We find no support in the statutory language or history to support the conclusion that Congress intended that persons engaged in the distribution of unauthorized copyrighted works should be able to do so with impunity.

Finally, we note the illogic of the defendants' argument. Section 1(a) enumerates that the copyright holder shall have the exclusive right to "print, reprint, publish, copy, and vend the copyrighted work." Applying the defendants' construction of § 1(f) to § 1(a), the Government would have to show that the defendant had printed, reprinted, published, copied and vended the copyrighted work to prove an infringement of a copyright holder's § 1(a) rights. This construction is untenable.[4]

## III

### Date of Fixation

■ Only songs fixed after February 15, 1972 are protected by the copyright laws. *United States v. Taxe,* 540 F.2d 961 (9th Cir. 1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977). Under former 17 U.S.C. § 209, a copyright certificate is prima facie evidence of the date of fixation. The Government relied on the copyright certificates as evidence that fixation occurred after February 15, 1972. The defendants contend the district court erred in not granting their motion for a judgment of acquittal because entries number 6 and 7 on the certificate forms had been left blank. This contention has no merit.

It is clearly stated on the registration certificate itself that: "the enactment for registration of sound recordings took effect on February 15, 1972. Under this provision, registration of claim to copyright is possible only for sound recordings fixed on or after February 15, 1972." Thus, the very existence of the certificates is evidence that the recordings in question were fixed after February 15, 1972, and as such are prima facie evidence that the date of fixation occurred after February 15, 1972. As we stated in *Taxe,* 540 F.2d at 966: "[w]hile the certificates are hearsay when offered to prove the truth of the date thereon, the certificates should be deemed at least prima facie accurate about the dates of fixation until the contrary appears." The defendants here offered no proof of a contrary fixation date, and therefore, the certificate should be considered prima facie accurate.

The fact that entries six and seven were left blank does not alter this conclusion. Entry number six contains a space for the listing of "New Matter in this Sound Recording." Entry number seven leaves a space for "Fixation before February 15, 1972." The meaning of these entries is fully explained in the corresponding application for a copyright certificate, set forth in the margin.[5]

---

4. Because we hold that the Government may prove a violation of § 104 by proving that the defendants distributed copyrighted sound recordings, it is unnecessary for us to consider whether there was sufficient evidence for the jury to find that the defendants reproduced sound recordings. Likewise, it is unnecessary for us to consider the failure of the court to give the defendants' proposed instruction on the definition of a sound recording. The defendants had requested the instruction so that the jury would be aided in its determining whether the defendants reproduced sound recordings.

5. Entries Numbered 6 and 7 stated:
   "NOTE: Leave line 6 blank unless the instructions below apply to your work.

6. New Matter in This Sound Recording. If any substantial part of the sounds fixed in this recording has been previously published in another recording, give a brief general statement of the nature of the new matter in this recording. New matter may consist of compilation, editorial revision, abridgment, and the like, as well as additional recorded material.

---

NOTE: Leave line 7 blank unless the instructions below apply to your work.
7. Fixation before February 15, 1972: If any substantial part of the sounds published for the first time in this recording were fixed

The instructions to the application for a certificate plainly state that these entries are to be completed only when the sounds fixed in the recording have been previously published in another recording or if the sounds had been previously published before February 15, 1972. Thus, the fact that these entries have been left blank do not show that the songs were not fixed after February 15, 1972; if anything, the fact that the certificate contained no information about pre-February 15, 1972 recordings suggests that the recordings were fixed after that date.

■ The defendants further contend that the district court erred by refusing to instruct the jury that the registration certificates are prima facie evidence of fixation. Without such an instruction, the defendants argue, the jury would give the certificates greater evidentiary effect than that warranted by § 209.

Even if the refusal to give the instruction was error, it was harmless. The certificates were prima facie evidence that the recordings were fixed after February 15, 1972, and the defendants offered no concrete evidence to dispute the dates of fixation.

## IV

### Sufficiency of the Evidence

The defendants next contend that for counts one through nine there was insufficient evidence to prove that they distributed the infringing recordings because the witnesses testified only that the tapes resembled the tapes that they had purchased from Moss. They also argue that the tapes supporting counts two, eight, nine and ten could not have been distributed by them since those tapes were on Lear Jet cartridges.

■ Having reviewed the record, we find the evidence more than sufficient to sustain the defendants' conviction. The defendants admitted they rewound the pancakes onto the cartridges. The Government witnesses who purchased the illicit tapes

before February 15, 1972, give a brief general statement of the nature of that material.

testified they had a long standing business relationship with Moss and that they had bought numerous tapes from him during that time. The fact that some tapes were wound on Lear Jet cartridges is of no significance, because the jury presumably chose not to believe the defendants' testimony that they did not use those cartridges.

■ With respect to count ten, the defendants argue that there was no proof that the tape was distributed for profit (as required by 17 U.S.C. § 104(b)) because the tape was not sold for money. Under § 104(b), it is irrelevant whether there was an exchange for value so long as there existed the hope of some pecuniary gain. *United States v. Taxe*, 380 F.Supp. 1010 (C.D.Cal.1974), *aff'd*, 540 F.2d 961 (9th Cir. 1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977). The testimony at trial met this test. The Government witness who had received the tape testified that Moss had given it to him because he had told Moss that he intended to buy the tape but that he had first wanted to check the tape.

## V

### Expert Testimony

■ Moss contends it was improper to admit expert testimony to determine if the tapes at issue came from a source identical to the copyrighted tapes. He bases his argument on the fact that the Government's expert witness testified that it took no "expertise" to perform his job. However, the witness later corrected this testimony and explained it would take a day of training to determine if the tapes came from an identical source. Such testimony assisted the jury as it would have been impractical to train the jury for a day. Admitting the testimony was not "manifestly erroneous." *United States v. Amaral*, 488 F.2d 1148, 1152 (9th Cir. 1973).

The judgment of the district court is affirmed.

(For further information concerning 'fixation,' see page 4.)"