UNITED STATES of America,
Plaintiff-Appellee,

v.

Larry DRUM, John C. McCulloch, Ferrol "Bud" McKinney, Curtis R. Snipes, George Washington Cooper, III, Jerry Herbert Jones, Defendants-Appellants.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Frances LOCKAMY,
Defendant-Appellant.

Nos. 81–5450, 81–5986.

United States Court of Appeals,
Eleventh Circuit.

June 8, 1984.

**1504**

Jack C. Harris, Jacksonville, Fla., for Drum.

Ralph Humphries, Jacksonville, Fla., for McKinney and Snipes.

David R. Fletcher, Jacksonville, Fla., for McKinney.

Hugh A. Carithers, Jr., Jacksonville, Fla., for McCulloch.

Eugene Loftin, Jacksonville, Fla., for Jones and Cooper.

Curtis Fallgatter, Asst. U.S. Atty., for U.S.

Bruce J. Greenspan, Jacksonville, Fla., Court-appointed, for Lockamy.

Before RONEY and HENDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

After a jury trial in the United States District Court for the Middle District of Florida, the appellants were convicted of various crimes enumerated in a 78-count indictment charging a Racketeering Influenced Corrupt Organizations (RICO) conspiracy, 18 U.S.C. § 1962(d); a RICO substantive offense, 18 U.S.C. § 1962(c); Interstate Transportation of Stolen Property (ITSP), 18 U.S.C. § 2314; Wire Fraud, 18 U.S.C. § 1343; copyright conspiracy, 18 U.S.C. § 371; and copyright substantive violations, 17 U.S.C. § 106(3) and 506(a).[1]

The indictment arose from the operation of an enterprise involved in the manufac-

---

1. The particular offenses for which the appellants were convicted are:

Jerry Herbert Jones—RICO conspiracy (Count 1), RICO substantive offense (Count 2), ITSP (Counts 4–9), Wire Fraud (Counts 13–19, 21), and copyright conspiracy (Count 50).

John C. McCulloch—RICO conspiracy (Count 1), RICO substantive offense (Count 2), ITSP (Counts 4–9), Wire Fraud (Counts 20–24), and copyright conspiracy (Count 50).

Curtis R. Snipes—RICO conspiracy (Count 1) RICO substantive offense (Count 2), Wire Fraud (Counts 13, 25–88), and copyright conspiracy (Count 50).

Ferrol "Bud" McKinney—RICO conspiracy (Count 1), RICO substantive offense (Count 2), ITSP (Count 3), Wire Fraud (Counts 29–31, 33–34), copyright conspiracy (Count 50), and copyright substantive offenses (Counts 51–54, 65).

Frances Lockamy—RICO substantive offense (Count 2), ITSP (Count 3), Wire Fraud (Counts 29, 32, 34–36), and copyright conspiracy (Count 50).

George Washington Cooper III—RICO conspiracy (Count 1), RICO substantive offenses (Count 2), Wire Fraud (Counts 38, 40–44), and coypright conspiracy (Count 50).

ture and distribution of "pirated"[2] eight-track and cassette tapes. The copyright violations allege criminal infringement of the copyright in certain sound recordings. The wire fraud counts charge a scheme to defraud copyright owners, sound recording companies, recording artists and musicians, the public and other individuals and businesses dealing in and purchasing recordings. The ITSP counts involve the interstate transportation of pirated tapes of a value in excess of $5,000.00. The RICO conspiracy and substantive counts assert that the defendants were employed by and affiliated with an enterprise, that is, a group of individuals associated in fact to operate an eight-track and cassette tape copyright infringement business. The defendants were alleged to have participated in the conduct of the enterprise's affairs through a pattern of racketeering activity which consisted of the predicate acts of ITSP and wire fraud.[3]

In this consolidated appeal, all the defendants-appellants claim that the ITSP counts must fail because the pirated tapes in issue were copied from legitimately acquired phonorecords, and thus they were not "stolen" property within the meaning of 18 U.S.C. § 2314.

Extending this argument further, the appellants contend that the invalidity of their ITSP convictions nullifies sufficient predicate acts to sustain the RICO convictions. They further argue that the Wire Fraud convictions must be set aside because the wiretaps utilized to gather certain evidence for their convictions were authorized for the investigation into the ITSP charges.

Ferrol "Bud" McKinney urges that his individual participation was excused because the Federal Bureau of Investigation ("FBI"), which launched the investigation at the instance of and with the authority of the recording industry, purchased tapes from him. McKinney also claims that the government failed to overcome his "first sale" defense at trial.

Larry Drum asserts that his trial was improperly joined with that of the other appellants, and that the prosecutor made improper remarks during his closing argument.

After reviewing the record and applicable case law, we find no error in the conduct of the trial and affirm the convictions.

The principal issue in this appeal is whether the National Stolen Property Act, 18 U.S.C. § 2314, proscribes the conduct of the defendants in this case. Under section 2314, it is a federal felony to transport "in interstate or foreign commerce any goods, wares (or) merchandise ... of the value of $5,000.00 or more, knowing the same to have been stolen, converted, or taken by fraud ...." The appellants maintain that the transportation of unauthorized copies of tapes is not a violation of section 2314 because copyrights are not "goods, wares or merchandise", and cannot be characterized as "stolen, converted or taken by fraud" within the meaning of the statute.

■ This contention was recently rejected in *United States v. Gottesman*, 724 F.2d 1517 (11th Cir.1984), in which it was held that the intangible idea protected by a copyright is effectively made material by its embodiment upon tape and therefore constitutes "goods, wares, or merchandise" that may be "stolen, converted or taken by fraud." *Id.* at 1520.

The appellants attempt to distinguish *Gottesman* by pointing out that *Gottesman* involved the reproduction of stolen copyrighted works whereas here the recordings reproduced here were acquired from legitimate sources. They cite the Fifth Circuit Court of Appeals decision in *United States v. Smith*, 686 F.2d 234 (5th Cir.1982), to support this view. The court

Larry Darrell Drum—copyright conspiracy (Count 50).

2. As used in the indictment, the term "pirate" refers to the unauthorized and unlawful reproduction of copyrighted sound recordings.

3. None of the appellants attack the sufficiency of the evidence in such a manner as to require an exhaustive review of the facts. Rather, the appellants raise various legal challenges to specific conduct. The recitation of facts necessary to the resolution of such challenges are thus set forth as specifically relevant.

there held that the reproduction and interstate transportation of legitimately acquired copyrighted works does not constitute an offense under section 2314.[4]

This distinction is not meaningful when considered in light of the purposes of the statute. The evil which Congress addressed in the National Stolen Property Act was the interstate traffic in stolen property. Where, as here, copyrighted material has been reproduced and distributed without the authority of the copyright owners, the property rights of owners are certainly affected adversely.

We have previously noted that copyrights, once given tangible form, may be "stolen, converted or taken by fraud" and fall within the reach of section 2314. The term "conversion," as defined by the Supreme Court, directly applies here:

> Conversion ... may be consumated without any intent to keep and without any wrongful taking, where the initial possession by the converter was entirely lawful. Conversion may include misuse or abuse of property. *It may reach use in an unauthorized manner or to an unauthorized extent of property placed in one's custody for a limited use.* (Emphasis added).

*Morissette v. United States,* 342 U.S. 246, 271–72, 72 S.Ct. 240, 254, 96 L.Ed. 288, 305 (1951). *See United States v. Sam Goody, Inc.,* 506 F.Supp. 380, 386, 390 (E.D.N.Y. 1981). The defendants were entitled to enjoy the copyrighted works as recorded on generally available phonorecords and tapes. They were not authorized to reproduce and distribute multiple copies of the copyrighted works. It is thus clear that the defendants' activities constituted use of copyrighted property in an unauthorized manner.

The rights of copyright owners in their property are just as deserving of protection as those of the owners of other types of property. *See States v. Belmont,* 715 F.2d 459, 461 (9th Cir.1983), *cert. denied,* ——

U.S. ——, 104 S.Ct. 1275, 79 L.Ed.2d 679 (1984). We disagree with the distinction made in *Smith* and urged by the appellants, finding the genesis of their unauthorized appropriations irrelevant to the charges against them. Simply stated, legitimate acquisition of copyrighted material does not ameliorate the effect of subsequent illegal duplication and distribution of that material. The prohibitions contained in section 2314 applied to the activities of the defendants.

Our conclusion that the unauthorized duplication and interstate distribution of the tape recordings constituted a violation of section 2314 immediately settles three other issues raised by the appellants. First, it validates all convictions under the ITSP statute. Second, it affirms the utilization of the ITSP counts as predicate RICO acts, thereby sustaining the RICO convictions. Finally, it validates both the use of the wiretap and the Wire Fraud convictions stemming therefrom because the ITSP violations furnished sufficient probable cause for the wiretap order.[5]

The copyright owners who were the victims of the piracy scheme cooperated with the undercover investigation by permitting the FBI to deal with the defendants for the sale and distribution of the pirated tapes. McKinney somehow perceives that permission as authority for him to engage in tape piracy because the FBI purchased some of the tapes from him.

There is no evidence whatsoever that the victim recording companies authorized the tape pirates themselves to continue their unlawful duplication and distribution. Moreover, there is evidence that McKinney engaged in the duplication and sale of copyrighted tapes prior to the initiation of the FBI investigation. Even at the time of his transactions with the FBI, he sold pirated tapes to other customers, none of whom were investigating him at the instance of or

---

**4.** In *Smith,* the copyrighted works were taped "off the air." The *Smith* court held that such copying does not come "within the ambit of § 2314." 686 F.2d at 243 n. 17.

**5.** Our holding with respect to these assignments of error makes it unnecessary to review the other reasons advanced by the government in support of the RICO and the Wire Fraud convictions.

with the approval of the recording industry.[6]

McKinney attacks the sufficiency of the evidence to negate the "first sale" defense which he raised at trial. The "first sale" doctrine provides that:

[W]here a copyright owner parts with title to a particular copy of his copyrighted work, he divests himself of his exclusive right to vend that *particular copy.* (Citations omitted.) Although the owner's other copyright rights remain intact, (*e.g.,* publishing or *copying*), the copyright owner has no right under the copyright statute to restrict subsequent sales or transfers of *that copy.* (Emphasis added).

*United States v. Moore,* 604 F.2d 1228, 1232 (9th Cir.1979). *Accord, United States v. Drebin,* 557 F.2d 1316, 1329–31 (9th Cir. 1977), *cert. denied,* 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978); *United States v. Atherton,* 561 F.2d 747, 750 (9th Cir. 1977).

■ The doctrine only applies to copies lawfully made, *American Intern. Pictures, Inc. v. Forman,* 576 F.2d 661, 663 (5th Cir.1978), and sanctions only the sale of a particular lawfully made copy, not its reproduction. *United States v. Powell,* 701 F.2d 70, 72 (8th Cir.1983). Thus, where the source of copies is unlawful, the doctrine is not implicated. *United States v. Moore,* 604 F.2d at 1232 ("A pirated tape that is reproduced from the original recording without authorization is plainly not the subject of a first sale."); *United States v. Gottesman,* 685 F.2d 1387 (11th Cir.1982), *cert. denied,* 460 U.S. 1014, 103 S.Ct. 1256–57, 75 L.Ed.2d 484 (1983) ("proof that no first sale had occurred was not required because the government established that the tapes were pirated").

■ The government may prove the absence of a first sale by direct evidence of the source of the pirated recordings or by circumstantial evidence that the recording was never authorized. *United States v. Moore,* 604 F.2d at 1232; *United States v. Whetzel,* 589 F.2d 707, 711–12 (D.C.Cir. 1978). Here, compelling evidence sustains both methods of proof.

■ First, the government produced direct evidence of the illicit source and origin of the pirate tapes. There was evidence that the enterprise legitimately purchased record albums and later unlawfully duplicated them and then distributed the copies for sale. Second, there was circumstantial evidence from which it could be concluded that the recording was unauthorized—inferior labels listing fictitious manufacturers and addresses, low prices, and clandestine circumstances of the sale. The evidence was thus entirely adequate to rebut the first sale defense.[7]

Larry Drum contends that his joinder with the other co-defendants for trial on the RICO conspiracy charge impermissibly prejudiced his trial for copyright conspiracy.[8] This, he claims, resulted in a "prejudicial transfer of guilt" to him and was responsible for his conviction on the copyright conspiracy count.

Prior to the trial, on September 29, 1980, Drum moved for severance of his trial pursuant to Fed.R.Crim.P. 14, alleging that he would be prejudiced by the admission of statements of co-defendants and by the fact that he was a minor figure in the purported enterprise. Nine days later, before the district court acted, Drum withdrew the motion, stating that withdrawal appeared to be in his best interest.

■ Despite this withdrawal, Drum relies on Rule 14 in alleging that he was "impermissibly prejudiced" by the joinder with his co-defendants. This reliance must

---

**6.** McKinney's argument strains credulity. Acceptance of his "vicarious authorization" premise would eliminate all prosecutions of tape piracy resulting from covert investigations conducted with or without the blessing of victims.

**7.** The trial court also correctly instructed the jury on the first sale doctrine.

**8.** Drum was indicted both for RICO conspiracy (Count 1) and Copyright conspiracy (Count 50). The overt acts alleged in support of Count 1 were realleged in Count 50, and no new, separate or distinct acts were asserted in Count 50. Drum was acquitted on Count 1 but found guilty on Count 50.

fail, because claims under Rule 14 are reviewable only for abuse of discretion, *United States v. Marionneaux*, 514 F.2d 1244, 1248 (5th Cir.1975), *cert. denied*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977),[9] and there can be no such abuse where the district court never exercised its discretion.

In an effort to overcome this waiver impediment, Drum seeks to place the joinder issue within the framework of Fed.R. Crim.P. 8 which relates to cases of misjoinder. Rule 8 provides:

(a) **Joinder of Offenses.** Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

(b) **Joinder of Defendants.** Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

■ Normally, a defendant who fails to move for a severance because of improper joinder is barred from pursuing it on appeal. *United States v. DeLeon*, 641 F.2d 330, 337 (5th Cir. Unit A 1981); *accord*, *United States v. Bailey*, 675 F.2d 1292, 1294 (D.C.Cir.), *cert. denied sub nom Walker v. United States*, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982). Courts have recognized certain instances where the failure to so move was not fatal to an appeal, *see, e.g.*, *United States v. Sanchez*, 532 F.2d 155 (9th Cir.1976) (joinder, though not complained of, "was a manifest injustice and constitutes plain error" under Fed.

R.Crim.P. 52(b)). Drum, however, has not made any showing of "manifest injustice" resulting from the joinder.

■ In any event, the copyright conspiracy transpired simultaneously with the RICO conspiracy. Indeed, identical overt acts were alleged to support both. It is clear, then, that the two conspiracies were properly joined under Rule 8(b).

Drum finally complains that the prosecutor made improper remarks which prejudicially affected his right to a fair trial. We have examined these statements in the context of the entire trial and find no error of such magnitude as to warrant a reversal.

■ The prosecutor referred to Drum as a "racketeer" and "tape pirate." Given the fact that there was ample evidence to infer that he was a criminal copyright infringer and that he participated in racketeering activity, the references were not such impermissible exaggerations as to mischaracterize his role in the criminal ventures. *See United States v. Taxe*, 540 F.2d 961, 968 (9th Cir.1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977) (not prejudicial to refer to defendant tape pirate as "scavenger" and "parasite").

Drum's reliance on *United States v. Smith, supra*, to support his argument that the government wrongfully referred to the ITSP charges against him is equally without merit. Having previously expressed our disagreement with the Fifth Circuit Court of Appeals decision in *Smith*, we find no error in the prosecutor's statements with respect to the ITSP violations. Moreover, the RICO count, in which Drum was charged, was predicated on the ITSP violations and it was incumbent upon the government to prove Drum's participation in that conspiracy.

■ Drum next faults the government's mention that the defendants' wives participated in the criminal activities but had not been indicted, claiming that it was an inference that the wives were not called to

---

**9.** *In Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

testify on behalf of their husbands because their testimony might be damaging. The government statement came in rebuttal to a defense argument suggesting favoritism, and was an attempt to persuade the jury that the government had fairly brought the indictment in this case. Thus, the defendants invited the remark.

■ The final charge of prosecutorial misconduct relates to the fact that the district court was forced to sustain nine objections to the government's rebuttal argument. These improper remarks, Drum argues, amounted to "pronounced and persistent misconduct" warranting reversal of his conviction. The district court sustained all of the objections, so we cannot say that the statements had a prejudicial effect on the outcome of the case.[10] Furthermore, Drum was convicted on but one of the two counts charged against him. This alone is telling proof that he was not prejudiced by the prosecutor's remarks. *United States v. Cartwright*, 632 F.2d 1290, 1294 (5th Cir.1980).

The judgments of conviction are

AFFIRMED.

---

**10.** We further observe that the jury was instructed that neither the opening statements nor the closing arguments constituted evidence.