UNITED STATES of America,
Plaintiff-Appellee,

v.

Tim O'REILLY, Defendant-Appellant.

No. 85–8742.

United States Court of Appeals,
Eleventh Circuit.

July 23, 1986.

P. Bruce Kirwan, Atlanta, Ga., for defendant-appellant.

Lark I. Tanksley, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before RONEY and CLARK, Circuit Judges, and GIBSON *, Senior Circuit Judge.

CORRECTED OPINION

PER CURIAM:

Tim O'Reilly was convicted of criminal copyright infringement by the sale of certain video games in violation of 17 U.S.C.A. § 506(a) and 18 U.S.C.A. § 2319(b)(1)(B). Although those statutes require proof of several elements, O'Reilly challenges only the sufficiency of the evidence on the first element: infringement of a copyright. We affirm.

This conviction arose from the sale of video game circuit boards. When Data East USA, Inc. complained to the FBI that a large number of individuals were distributing counterfeited copies of their video games, Karate Champ and Kung Fu Master, the FBI began an investigation. Special Agent George Murray posed as a businessman interested in buying counterfeited copies of Karate Champ, Karate Champ (2-Player), and Kung Fu Master games. He contacted O'Reilly and on two occasions purchased printed circuit boards from him, the first time 49 boards and the second time 65 boards. During their dealings, Agent Murray recorded numerous incriminating conversations.

An expert witness, Wayne McGuire, testified that the circuit boards were counterfeit because none of the boards contained the custom chips or identification stickers that an authentic board would have. Executives of Data East USA gave similar testimony.

■ O'Reilly's first argument, that the Government failed to prove what is copyrighted, is frivolous. The Government introduced the copyright registration certificates for the Kung Fu Master, Karate Champ, and Karate Champ (2-Player) games. Karate Champ and Karate Champ (2-Player) were authored by a Japanese corporation, Data East Corporation, but its American affiliate, Data East USA, Inc., is the registered copyright claimant in the United States. A Japanese corporation, Irem Corporation, authored and is registered as the copyright claimant for Kung Fu Master. Irem Corporation entered into an Exclusive License Agreement with Data East USA for the Kung Fu Master game. The registration certificates for all three games indicate that the work copyrighted is the "Audio-visual work in a video game (attract and play mode)," that is, what appears on the video screen.

■ Courts have consistently held video game audio-visual work is subject to copyright under 17 U.S.C.A. § 102(a)(6). *Midway Manufacturing Co. v. Artic International, Inc.*, 704 F.2d 1009 (7th Cir.), *cert. denied*, 464 U.S. 823, 104 S.Ct. 90, 78 L.Ed.2d 98 (1983); *Williams Electronics, Inc. v. Artic International, Inc.*, 685 F.2d 870, 873–74 (3d Cir.1982); *Stern Electronics, Inc. v. Kaufman*, 669 F.2d 852 (2d Cir.1982); *Midway Manufacturing Co. v. Strohon*, 564 F.Supp. 741, 746 (N.D.Ill. 1983); *Midway Manufacturing Co. v. Bandai-America, Inc.*, 546 F.Supp. 125, 139 (D.N.J.1982). That other aspects of the video game, such as the computer program, chips, or graphics, may also be protected under copyright or patent laws does not defeat the Government's clear proof that the video images are copyrighted.

■ O'Reilly argues that in two ways the evidence was insufficient to prove his games violated the copyrights. First, he says the Government did not compare the audio-visual works introduced into evidence

---

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designa-   tion.

with those on file in the Copyright Office of the United States. When the audio-visual works of a video game are copyrighted, a videotape of those works is filed with the Copyright Office. In *United States v. Shabazz*, 724 F.2d 1536, 1539 (11th Cir. 1984), this Court indicated that it is "better practice" for the Government to compare the counterfeit material with the duplicate registered with the Copyright Office. We emphasized in *Shabazz*, though, that the burden of raising the issue of authentication is on the party opposing admission. Here, as in *Shabazz*, O'Reilly did not meet his burden of raising an issue on this point.

O'Reilly did not object to admission of the Karate Champ and Kung Fu Master games. The jury viewed portions of those games side-by-side with the counterfeit copies. The Government's evidence made out a *prima facie* case as to the authenticity and identification of the games, a case in no way rebutted by the defendant. *Shabazz*, 724 F.2d at 1539.

■ Second, O'Reilly argues that the Government did not compare the entire play of the counterfeit boards with the copyrighted games. The Government's expert witness, Mr. McGuire, testified that he connected each printed circuit board to a power supply and viewed the "attract mode" and part of the "play" mode. The attract mode refers to the audio-visual display seen and heard by a prospective customer, and displays some of the essential visual and sound characteristics of the game. The play mode refers to the audio-visual display seen and heard by a person playing the game.

For the boards producing the Karate Champ games, McGuire examined the attract mode and two to three minutes of the play mode. The play mode is divided into five levels of difficulty. He examined only the first level and examined the games for similar colors and characteristics. The characters were the same, and the screen displayed "Product of Data East."

For the boards producing the Kung Fu Master games, McGuire examined the attract mode and one to two minutes of the first level of the play mode. He concluded that it was the Kung Fu Master game because "[t]he characters are the same and the game theme is the same. The hero's girlfriend is kidnapped and the hero has to rescue her, has to proceed through different levels in a building avoiding obstacles and opponents to rescue his girlfriend. And they are the same game." The screen displayed the copyright "1984 Irem."

For both games, McGuire testified that he did not play the games to the end of the last screen because "[i]t wasn't necessary. The displays were—the attract modes were the same and the initial play of the first screen was the same in each case." This "told me that the games were being—the games are Karate Champ and Kung Fu Master."

O'Reilly argues that the Government thus failed to prove that levels two through five of the games he sold were the same as or substantially similar to those in the copyrighted games. Such proof is unnecessary. "Infringement may be found where the similarity relates to matter which constitutes a substantial portion of [the copyright holder's] work—*i.e.*, matter which is of value to [the copyright holder]." *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 619 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982). "[I]t is enough that substantial parts were lifted; no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir.), *cert. denied*, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936). Courts have found infringement in circumstances considerably less egregious than these. *See Atari, Inc.*, 672 F.2d at 619 ("It is irrelevant that K.C. Munchkin has other game modes which employ various maze configurations. The only mode that concerns this court is the one that uses a display most similar to the one in PAC–MAN."); *Stern Electronics, Inc. v. Kaufman*, 523 F.Supp. 635, 639 (E.D.N.Y.1981), *aff'd*, 669 F.2d 852 (2d Cir. 1982).

On numerous occasions, O'Reilly represented the game boards he sold to Agent Murray as Karate Champ and Kung Fu Master boards. The expert testimony, the jury's own observations and these statements could have been found by the jury to establish proof of infringement beyond a reasonable doubt.

AFFIRMED.