**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Tom GOSS, Defendant-Appellant.**

**No. 85–8930.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 3, 1986.

Eugene A. Medori, Jr., Decatur, Ga., Charles Eugene Goss, Harlan, Ky., for defendant-appellant.

Lark I. Tanksley, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before VANCE and EDMONDSON, Circuit Judges, and ALLGOOD *, Senior District Judge.

EDMONDSON, Circuit Judge:

Appellant Tom Goss was convicted for infringing copyright by distributing copies of audiovisual works of the video games

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

Karate Champ and Kung Fu Master. An owner of a legally made copy, however, is entitled to sell or otherwise dispose of that particular copy without the copyright owner's authorization. 17 U.S.C. Sec. 109(a). In this case, the copies in which the audiovisual works were fixed were memory chips, also known as ROMs. The government totally failed to prove that the ROMs which Goss sold were illegally made or unowned by Goss, apparently because it did not realize that the ROMs were the copies. Instead, the government attempted to show that the circuit boards which Goss sold were "counterfeit."

At oral argument, the government forthrightly conceded that at trial it did not address the ROM issue at all. More specifically, the government conceded that at trial it never contended that the pertinent ROMs, themselves, were from illegitimate manufacturers. Because there was insufficient evidence against Goss, we hold that his motion for judgment of acquittal should have been granted and reverse with directions to enter a judgment of acquittal.

The first count of Goss's indictment charged him with criminally infringing

> the copyrights of audiovisual works ... for the purposes of commercial advantage and private financial gain [by] *distribut[ing more than seven* but less than sixty-five] unlawfully manufactured and unauthorized *copies* of the *audiovisual works* "Karate Champ" and "Kung Fu Master".... (emphasis added).

Although the indictment included a second count, that count was dismissed on the government's motion.

At trial, the government attempted to prove Goss's guilt by showing that Irem Corp. ("Irem") and Data East, Corp. ("Deco"), two Japanese corporations, developed the Kung Fu Master and Karate Champ video games, respectively. These corporations transferred a portion of their rights as copyright holders in these games to Data East, U.S.A., an American company. Among the rights so transferred was the exclusive right to distribute these games in North America.

The government's evidence showed that Goss sold to an undercover F.B.I. agent four circuit boards for the Kung Fu Master game and five entire Karate Champ games in upright cabinet form. Moreover, a government witness, who is employed as vice-president of Data East, U.S.A., testified that Goss was not authorized to distribute these.

The government presented evidence that the five upright Karate Champ games sold by Goss displayed the same visual images and sounds as did an authorized, factory-made Karate Champ game. Likewise, when attached to a power supply and other hardware, the four Kung Fu Master circuit boards sold by Goss produced the same sights and sounds as did an authorized Kung Fu Master game.

During the trial, the government attempted to prove that the circuit boards sold by Goss, including the five in the upright complete games, were "counterfeit." To show this, the government demonstrated that Goss's boards lacked the manufacturer's label and custom chip which were affixed to authorized boards.

The government also played tape recordings of conversations in which Goss agreed to sell the games. In the first conversation, the undercover F.B.I. agent referred obliquely to a "problem." Goss responded by saying "ya can't be too brave or conspicuous with it. Ya gotta use a little common sense." Shortly thereafter, Goss also stated that the legal expenses of "pull[ing] a game off" are so great that "[t]here's nobody left that's got the money to pursue it." In this tape-recorded conversation, Mr. Goss also said that:

> The one thing they're after is the people that's bringing' the boards in the country. That's the ones they, they've never, I don't reckon they've ever got after an operator.... And if they do come in, all you gotta say is, you know, I bought this thing and so, off of so and so's truck or I bought it at an auction or somethin'. And the worst you're gonna lose, you're gonna lose the game.

After the government rested its case, Goss moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29, on the grounds that the government did not present sufficient evidence to sustain a conviction. At the close of all evidence, Goss renewed this motion. Both times, the judge denied it. The jury returned a verdict of guilty as charged.

Goss raises numerous arguments on appeal. One of Goss's contentions is that the district court erred by denying his motion for acquittal, because the government presented insufficient evidence that the copies which he sold were illegally made or that he did not own them.[1] Since we agree with this contention, we do not address Goss's other arguments.[2]

We apply a rigorous standard of review. A criminal conviction can be reversed by an appellate court for insufficiency of evidence only if a reasonable jury could not have found that the evidence established guilt beyond a reasonable doubt. When determining whether the evidence was insufficient, an appellate court must view the evidence and the inferences which can be drawn therefrom in the light most favorable to the government. *See United States v. Shabazz,* 724 F.2d 1536, 1539 (11th Cir.1984); *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).[3]

To determine whether the government presented sufficient evidence that Goss illegally distributed copies of audiovisual works, it is necessary to identify precisely the audiovisual works and the copies in which they were fixed. The Act defines an "audiovisual work" as a work:

that consist[s] of a series of related images which are intrinsically intended to be shown by the use of machines or devises such as projectors, viewers, or electronic equipment, together with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied.

17 U.S.C. Sec. 101. Thus, the visual images and sounds of the video games, Kung Fu Master and Karate Champ, constitute "audiovisual works". Such video game audiovisual works can be copyrighted. *United States v. O'Reilly,* 794 F.2d 613, 614 (11th Cir.1986); *Midway Mfg. Co. v. Artic International, Inc.,* 704 F.2d 1009, 1011–12 (7th Cir.) *cert. denied,* 464 U.S. 823, 104 S.Ct. 90, 78 L.Ed.2d 98 (1983); *Williams Electronics, Inc. v. Artic International, Inc.,* 685 F.2d 870, 873–75 (3d Cir.1982); *Stern Electronics, Inc. v. Kaufman,* 669 F.2d 852, 857 (2d Cir.1982).

Under section 101 of the Act, "copies" are defined as:

material objects, other than phonorecords, in which a work is fixed by any method now known, or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device....

17 U.S.C. Sec. 101. A video game has a number of physical components: e.g., a power supply, display screen, outer cabinet with graphics, controls (such as the "joy stick" and firing buttons), a circuit board, and memory chips attached to the circuit board. The material object or "copy" in which the audiovisual work is fixed must be one or more of these components.

---

1. In his brief, Goss couches this argument in terms of the "first sale" doctrine which evolved under the former Copyright Act.

2. Goss's other arguments are that (a) the government presented insufficient evidence regarding originality of authorship; (b) the district court erred by refusing to dismiss the indictment for prosecutorial misconduct and by failing to hold a hearing; (c) the trial court abused its discretion by admitting evidence of other alleged acts of infringement; and (d) the trial court erred in refusing to instruct the jury on the defense of entrapment.

3. In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as precedent all decisions of Unit B of the former Fifth Circuit.

At trial, the government attempted to show that the circuit boards were "counterfeit," which suggests that it believed that the entire circuit boards—including the hardware and attached memory chips—constituted the copies. The government appeared confused at oral argument regarding what were the copies. When asked to identify the copies which Goss sold, the government responded that the audiovisual works were the copies. This answer misconceives the statutory definition of "copies": "work" and "copy" are not synonymous terms; rather, a copy is the material object in which a work is fixed.

Goss presented uncontradicted testimony by two experts that the copies in which the audiovisual works were fixed were memory chips. Such memory devices can be either ROMs (read only memory), PROMs (programmable read only memory) or E–ROMs (erasable read only memory), and are sometimes referred to generically as ROMs.

Mr. Leskey, one of Goss's expert witnesses, testified that the memory which is programmed into the ROMs in a video game includes

[a]ll of the memory in the unit, that is, all of the video or visuals, the foreground objects, the background imagery, the sound patterns, the controls for the sound patterns, the entire system controls ... as to how the game operates, the logic of the game, how you win or lose....

This testimony was uncontested.

Moreover, Goss presented uncontradicted expert testimony that the ROM chips in this case were placed in sockets on the circuit boards, and could be removed from the circuit boards. By replacing one set of ROM chips with another, these experts testified, it is possible for the same circuit board to produce many different games.

Also, Goss presented uncontroverted expert testimony that the circuit board is simply hardware which responds to instructions from the software (i.e., the program stored in the memory chips). One of Goss's experts testified that the circuit board is a mechanism similar to a video cassette player, whereas the set of ROMs is a copy similar to a video cassette tape. Another of Goss's expert's analogized the ROM chips to slides and the circuit board to a projector.

All of the evidence adduced at trial showed that the ROMs were the copies. A jury could not reasonably have found otherwise.[4] To prove that Goss illegally distributed copies, therefore, the government was required to show that Goss illegally distributed ROM chips.

Criminal infringement of copyright has three elements: (1) infringement of a copyright (2) done wilfully (3) for purposes of commercial advantage or private financial gain. 17 U.S.C. Sec. 506(a). Thus, one of the elements which the government must prove is "infringement." A person infringes copyright if he or she violates one of the exclusive rights of a copyright owner. 17 U.S.C. Sec. 501(a).[5]

Goss was indicted and convicted for violating the exclusive right of a copyright holder to distribute copies. This exclusive right is set forth in Sec. 106 of the Act, which provides in pertinent part that:

Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: ...
(3) to distribute copies or phonorecords of the copyrighted work to the public by

---

4. We note the factual narrowness of our ruling. The technology of video games, like other computer technologies, is diverse and constantly changing. No single rule of law can be developed regarding what constitutes a "copy" in a video game. Instead, the question of what component or components of a video game constitutes the "copy" in which the audiovisual work is fixed is a determination of material fact which must be made by the trier of fact in each copyright case. We simply hold that, in light of extensive, uncontradicted expert testimony presented at trial, a reasonable jury could only conclude that the copies in this case were the ROMs.

5. Illegally importing copies into the United States can also infringe copyright, *id.,* but Goss was not charged with illegal importation.

sale or other transfer of ownership, or by rental, lease, or lending. . . .

This exclusive distribution right, however, is limited by section 109(a) of the Act, which provides that:

Notwithstanding the provisions of section 106(3), *the owner of a particular copy* . . . *lawfully made* under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy. . . .

17 U.S.C. section 109(a) (emphasis added).

The effect of section 109(a) is that, if Goss owned a legally made copy (i.e., a legally made set of ROMs), he was entitled to sell or otherwise to distribute such ROMs. Selling such legally obtained ROMs would not infringe the copyright owner's exclusive distribution right, regardless of whether the ROMs were attached to a "counterfeit" board.

Our analysis would not be complete, however, without considering which party bears the burden of proof under section 109(a). Legislative history indicates that section 109(a) is a defense in civil copyright cases. After criticizing a district court opinion in a civil case which placed on the plaintiff the burden of proving that a copy had been unlawfully made or acquired, the House Committee on the Judiciary stated that "in an action to determine whether a defendant is entitled to the privilege established by Sec. 109(a) . . . , the burden of proving whether a particular copy was lawfully made or acquired should rest on the defendant." H.R.Rep. No. 94–1476, 94th Cong., 2d Sess. 80–81, *reprinted in* 1976 U.S. CODE CONG. & AD. NEWS 5659, 5694–95. Whether the Committee intended this comment to apply to criminal infringement actions is unclear.

Case law exists regarding the burden of proving in a criminal case that a copy is legally made and acquired. This case law, however, uses the terminology of the "first sale" doctrine.

The first sale doctrine developed under section 27 of the former Copyright Act, which provided in pertinent part that "nothing in this title shall be deemed to forbid, prevent, or restrict the transfer of any copy of a copyrighted work the possession of which has been lawfully obtained." Interpreting former section 27, courts held that a copyright owner's exclusive vending right extended only to the first sale of a copy. If a legally made copy had been the subject of a first sale, then further distribution of that copy did not infringe the copyright owner's exclusive vending right. *See generally* 2 Nimmer on Copyright, Sec. 8.12 (1985).

Courts applying the former Copyright Act consistently held that in a criminal case the government has the burden of proving the absence of a first sale. *See American International Pictures, Inc. v. Foreman*, 576 F.2d 661, 663 (5th Cir.1978).[6] *See generally* 3 Nimmer on Copyright, Sec. 15.01 (1985).

The Eleventh Circuit has applied the "first sale" doctrine in a criminal case under the present Copyright Act. *United States v. Drum*, 733 F.2d 1503 (11th Cir. 1984), *cert. denied sub nom., Cooper v. United States*, 469 U.S. 1061, 105 S.Ct. 543, 83 L.Ed.2d 431 (1984); *cert. also denied sub. nom., McCulloch v. United States*, 469 U.S. 1061, 105 S.Ct. 543, 83 L.Ed.2d 431 (1984), *cert. also denied sub nom., McKinney v. United States*, 469 U.S. 1061, 105 S.Ct. 543–44, 83 L.Ed.2d 431 (1984), *cert. also denied sub nom., Lockamy v. United States*, 469 U.S. 1061, 105 S.Ct. 544, 83 L.Ed.2d 431 (1984), *overruled in part, Dowling v. United States*, 473 U.S. 207, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985). In *Drum*, a criminal RICO case involving substantive copyright offenses under the 1976 Copyright Act, the Eleventh Circuit treated the "first sale" issue as a *defense*. The *Drum* Court indicated that, once the defense had been raised, the government had

---

**6.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

an obligation to rebut it. The Court reasoned as follows:

McKinney attacks the ~~sufficiency of~~ the evidence to negate the "first sale" defense which he raised at trial.... The government may prove the absence of a first sale by direct evidence of the source of the pirated recordings or by circumstantial evidence that the recording was never authorized [i.e., illegally made].... The evidence [presented at trial was] entirely adequate to rebut the first sale defense. *Id.* at 1507.

██ We are bound by *Drum,* even though it does not explicitly mention section 109(a). *Drum* was decided under the present Act and, like our case, involved the burden of proof with respect to whether a copy was legally made or acquired. Therefore, we hold that in a criminal copyright case involving unauthorized distribution of copies, section 109(a) is a defense. If a defendant presents any evidence that the copies were legally made and that he or she owned them, this is sufficient to create a jury issue with respect to the section 109(a) defense. When the defendant makes such a showing, the burden shifts to the government to demonstrate beyond a reasonable doubt that the pertinent copies were either not legally made or not owned by the defendant. *Cf. United States v. Andrews,* 765 F.2d 1491, 1499 (11th Cir.1985), *cert. denied sub nom. Royster v. United States,* — U.S. ——, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986) (shifting burden of proof for entrapment defense).

Goss's two expert witnesses compared the ROMs on an authorized, factory-built Kung Fu Master circuit board with the ROMs on a Kung Fu Master circuit board sold by Goss. According to these experts, the ROMs on both boards were the same size. One of the experts noted that the ROMs were the same shape, and that, indeed, some of the ROMs had identical serial numbers. Both experts testified that a visual inspection revealed no distinguishing physical characteristics between the ROMs on the two boards, and that it was impossible to determine by visual inspection where or by whom the ROMs had been programmed. Of course, the government's evidence indicated that the entire boards, including the ROMs, produced identical audiovisual works.

One of Goss's experts testified that it "might" be possible to use a method, which costs approximately ten thousand dollars, to examine the ROMs "address by address." If the test indicated a difference between the ROMs, he testified, "you might be able to tell something," but if it showed no differences between the ROMs, "you still wouldn't know."

In addition, the evidence at trial showed that there are numerous possible sources of legally made Kung Fu Master ROMs which could have been inserted into the boards Goss sold. Such sources include used and broken Kung Fu Master games, as well as thousands of boards sold abroad separately from the game cabinets.

██ Also, Goss presented uncontroverted evidence that he owned the ROMs in the Kung Fu Master boards which he sold to the F.B.I. agent. This evidence consisted of proof that he bought the boards, including the ROMs, from a firm in Kentucky. We hold that Goss made a sufficient showing to raise a section 109(a) defense with respect to the ROMs in the four Kung Fu Master boards he sold.[7]

Once Goss raised a section 109(a) defense with respect to the ROMs in the four Kung Fu Master boards, the burden shifted to

---

7. Goss presented no expert testimony comparing the ROMs in the five Karate Champ games he sold with the ROMs in an authorized Karate Champ game. Also, these ROMs were apparently physically distinguishable, inasmuch as the Karate Champ ROMs sold by Goss lacked the "Deco" copyright notice attached to the ROMs on the authorized Karate Champ board. We do not decide whether Goss presented any evidence which raised a section 109(a) defense with respect to the ROMs in the five Karate Champ boards.

the government to prove beyond a reasonable doubt that these Kung Fu Master copies were either illegally made or not owned by Goss. The government failed to meet this burden. *Indeed, the government concedes that it never focused on or addressed the ROMs at all.*

The government presented no evidence whatsoever that Goss did not own the ROMs he sold. Nor did the government present any direct evidence that the ROMs were illegally manufactured. Goss's highly ambiguous comments, which suggest that he thought he was doing something wrong, arguably constitute no evidence that the ROMs, in particular, were illegally manufactured. If these comments do constitute evidence, they are *at most* highly tenuous circumstantial evidence that the ROMs were illegally made.

The government's effort to prove that other components of the circuit boards were made without permission was misdirected. The ROMs were the copies, not the other components of the circuit board to which they were attached. Proof that these other elements were made without authorization does not show that the copies—the ROMs—were illegally manufactured. The government's evidence is analogous to proof, in a prosecution for illegal distribution of phonorecords, that defendant sold a record player which had been made without authorization. Manufacture and distribution of a record player without authorization does not infringe copyright in the phonorecord.[8]

In short, the government did not try to prove anything specifically with regard to the ROMs. If the government nonetheless happened to present evidence bearing on the ROMs, then such evidence was highly tenuous circumstantial evidence. No jury could have reasonably found that the government proved beyond a reasonable doubt that ROMs in the four Kung Fu Master boards which Goss sold were illegally made or not owned by Goss. Therefore, the government's proof with respect to these Kung Fu Master ROMs was insufficient. *Cf. United States v. Gandolfo,* 577 F.2d 955, 958–59 (5th Cir.1978), *cert. denied,* 441 U.S. 933, 99 S.Ct. 2056, 60 L.Ed.2d 662 (1979) (circumstantial evidence presented by government was so weak that it could not sustain a conviction).

We note that the burden imposed on the government is not an impossible one. Even where the distributed copies are physically indistinguishable from the authorized copies, the government can rebut a section 109(a) defense by direct evidence that the copies were illegally made (e.g., clear admissions by defendant, or testimony by a third party who saw the copies being made without authorization) or circumstantial evidence to this effect (e.g., facts indicating that defendant or an upstream supplier purchased reproducing equipment which would enable them to make the copies without authorization). Of course, where the copies are physically indistinguishable, the government is also free to show that the defendant did not own the copies.

The government argues that it did not need to prove anything with respect to the ROMs, because a copyrighted audiovisual work of a video game can be infringed separately from the program which produces it. Of course, the government is correct that the audiovisual work and the program of a video game are both copyrightable works, which can be infringed separately. *See Stern Electronics, supra,* 669 F.2d at 855. But the fact that the

---

**8.** The evidence regarding the absence of the custom chip from the boards sold by Goss is also irrelevant. The testimony at trial established that the custom chip on each authorized board was a complicated relay device, which functioned as a "lock" by making it difficult to manufacture a board without permission. Proof that Goss sold boards without custom chips is irrelevant to whether the ROMs, in particular, were illegally manufactured. Indeed, such evidence is analogous to proof that defendant sold a record player without a lock on it. A copyright holder of a phonorecord has no rights with respect to the record player, and sale of a record player without a lock does not infringe copyright.

copyrighted audiovisual work *can be* separately infringed does not relieve the government of its burden of proving that it *was in fact* infringed.

A critical factor in this case is the limited nature of the exact crime charged: Goss was indicted and convicted for infringing the copyright holder's exclusive right to distribute *copies.* [9] Therefore, the government was required to focus on the *material objects* in which the audiovisual works were fixed and to show that these were distributed illegally. This the government has failed to do.

Goss was indicted for the felony of distributing more than seven but less than sixty-five copies of audiovisual works without authorization within a 180–day period. *See* 18 U.S.C. Sec. 2319(b)(2)(B); *cf.* 18 U.S.C. Sec. 1. To distribute seven or fewer copies can be a misdemeanor. 18 U.S.C. Sec. 2319(b)(3); *cf.* 18 U.S.C. Sec. 1. The government did not request a charge regarding the lesser included misdemeanor offense; and, indeed, the judge instructed the jury that it must find that Goss distributed more than seven copies in order to find him guilty. The jury returned a verdict of guilty as charged.

The government attempted to prove that Goss distributed nine copies without authorization: four Kung Fu Master copies and five Karate Champ copies. As the foregoing analysis demonstrates, Goss presented evidence sufficient to raise a section 109(a) defense with respect to the four Kung Fu Master copies; and the government failed to rebut it. Thus, with respect

to the four Kung Fu Master copies, the government's evidence was insufficient.

Even assuming, arguendo, that the government's evidence was adequate with respect to the five Karate Champ copies, the government still failed to present sufficient evidence to sustain Goss's felony conviction. At most, the government proved illegal distribution of five copies. The fact that distribution of five copies can be enough for a misdemeanor conviction is immaterial, because Goss was neither charged for nor convicted of such a misdemeanor.

We infrequently reverse on insufficiency of evidence grounds. The government totally failed, however, once the burden shifted to it, to rebut Goss's section 109(a) defense with respect to the ROMs in the four Kung Fu Master boards. Therefore, we are constrained to conclude that the evidence was insufficient to support Goss's conviction.[10] The crime was not proved.

Accordingly, the conviction is REVERSED with instructions to enter a judgment of acquittal.

---

**9.** The government could have sought an indictment for violating one or more of the copyright holder's other four exclusive rights: i.e., to reproduce the work in copies, to prepare derivative works, to perform the work publicly, and to display the work publicly. *See* 17 U.S.C. Sec. 106. It did not. Even if it had, the government could not have prevailed by simply asserting that the audiovisual work can be separately infringed. It *would have been required to show that infringement in fact occurred.*

**10.** This Circuit's recent decision in *United States v. O'Reilly,* 794 F.2d 613 (11th Cir.

1986), does not compel a contrary result. In *O'Reilly,* another panel of this Court affirmed a conviction for distribution of copies of audiovisual works in the video games Kung Fu Master and Karate Champ. The *O'Reilly* Court did not discuss what constituted the copies of the audiovisual works. In addition, it discussed neither a section 109(a) defense, nor the government's duty to rebut that defense once it is raised. In light of the opinion, these issues were apparently not presented in *O'Reilly.*