**UNITED STATES of America,
Plaintiff,**

v.

**Richard TAXE et al., Defendants.**

**No. CR 74-800-IH.**

United States District Court,
C. D. California.

Aug. 12, 1974.

William D. Keller, U.S. Atty. by Chester L. Brown, Asst. U.S. Atty., Los Angeles, Cal., for United States.

Miller, Glassman & Browning by Stephen D. Miller and Donald L. Saltzman, Beverly Hills, Cal., for Richard Taxe.

Flax & Rosenfield by Larry S. Flax, Los Angeles, Cal., for Ronald Taxe and Rick Ward.

Robert M. Talcott, Los Angeles, Cal., for Geraldine Gonzales.

## MEMORANDUM OPINION RE JURY INSTRUCTIONS

IRVING HILL, District Judge.

The Court is informed that the instant case is the first criminal prosecution under the 1971 Sound Recording Amendment to the Copyright Act which has been tried to a conclusion. The case involved eight-track stereo tape recordings. After a jury trial lasting approximately six weeks, the above named Defendants were convicted of conspiracy to violate the Copyright Act (1 count), copyright infringement (20 counts), and mail fraud (5 counts involving one Defendant only). Under the evidence, Defendants manufactured their tapes by re-recording hit tapes produced and distributed by major record companies. The re-recordings were done in each instance with one or more of the following changes: speeding up, slowing down, deletion of certain frequencies or tones, addition of echoes or moog synthesizers.

Because the case was apparently an important one and a case of first impression, the Court feels that there should be published the portions of its jury instructions which define the intent and scope of the 1971 statute and the elements of the criminal offense of infringement thereunder. Those portions of the jury instructions follow the text of this Memorandum Opinion.

There are certain legal issues which were confronted and resolved in the preparation of the instructions. The Court feels that some explanation of the legal analysis underlying its resolution of those legal issues is appropriate for publication and so that, upon appeal of the convictions, the Court of Appeals may know the basis of the Court's reasoning. These legal issues which the Court confronted are:

I. Is an album copyrightable which consists of many songs, some of which were first fixed prior to February 15, 1972, and others first fixed after February 15, 1972, and, if so, to what extent is it copyrightable?

II. What effect, if any, do changes made by the re-recorder of the type above described have on the offense of infringement? In this connection, what place, if any, is given to the copyright doctrine of "substantial similari-

ty" in defining the criminal offenses involved in this case?

### TAPES CONTAINING BOTH PRE FEBRUARY 15, 1972 FIXINGS AND POST FEBRUARY 15, 1972 FIXINGS

■ The statute in question covers only sound recordings first fixed after February 15, 1972, 17 U.S.C. § 1(f). A record album or long-playing tape often contains several separate "songs" or "bands". Of course, if every song or band was first fixed after February 15, 1972, the entire work (the long-playing tape) would be copyrightable. In this case, the Court was faced with the question of the effect of including on a long-playing tape some songs first fixed on a master prior to February 15, 1972, along with other songs first fixed on a master after February 15, 1972. As will be seen from the following instructions, the Court held that the copyright of the tape protected only those songs first fixed on a master after February 15, 1972. The other songs were held not to be protected.

■ This result can be explained on two related grounds. First, such a tape must be viewed as a "derivative work", 17 U.S.C. § 7. See Nimmer on Copyright, §§ 39–41. As a derivative work, the entire tape is copyrightable but it is protected only insofar as portions of it meet the copyright requirement of "originality". Obviously, the re-recording of a previously fixed song cannot meet the originality requirements, and those portions of such a derivative work are unprotected. Second, a common sense reading of the sound recording amendment of 1971 yields the same result, since the restriction of protection to works fixed after February 15, 1972, would be meaningless if works fixed before that date could gain protection simply by being re-recorded in new albums.

Therefore, the Court has concluded that if the work in question, i. e., the complete tape, was fixed after February 15, 1972, all portions of that work which had not previously been fixed are pro-

tected, and a re-recording (as described below), of any of those portions would be an infringement.

■ In this case, there was testimony from a FBI sound expert concerning one song on each allegedly infringing tape. There was independent evidence as to each of those songs that the performance of it had not been fixed prior to its fixation in the copyrighted works, after February 15, 1972. Since the testimony of the sound recording expert, corroborated by other testimony including admissions by Defendant Richard Taxe, indicated a re-recording of those songs (as well as the rest of the long-playing tapes), the Court holds such evidence to be sufficient on the question of infringement. Clearly, the taking of an entire song from a long-playing tape or album is a substantial taking meeting the requirements of the Copyright Act.

### THE EFFECT OF CHANGES BY THE RE–RECORDER

■ As indicated above, the Defendants in this case re-recorded the copyrighted songs, but changed them in most or all instances by speeding up the sounds, slowing down the sounds, deleting certain frequencies or tones or adding echoes or sounds from a moog synthesizer. The evidence revealed that these changes were insubstantial to the human ear and were intended to be so. The question is raised as to the effect of said changes on the question of infringement.

It should be clear that such re-recordings violate § 1(f). That section gives the copyright holder the exclusive right to reproduce and to distribute to the public reproductions of his copyrighted work. The first proviso of that section limits that exclusive right to the right "to duplicate the sound recording in a tangible form that directly or indirectly recaptures the actual sounds fixed in the recording." The second proviso explains further that said right "does not extend to the making or duplication of another sound recording that is an independent fixation of other sounds, even though

such sounds imitate or simulate those in the copyrighted sound recording." The language of the statute makes clear that the demarcation between infringing works and legal imitations or simulations inheres in the manner of production of the allegedly infringing work. If the work is produced by re-recording the original sounds, or "recapturing" those sounds, the work infringes. If the work is produced by imitation or simulation by the hiring of other musicians, or even the same musicians, to perform the copyrighted work in as similar a manner as possible, there is no infringement. See Goldstein v. California, 412 U.S. 546 at 550–551, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973) (construing non-identical California statute with similar purposes). The legislative history of the 1971 Act indicates that its intent was to put record "pirates" out of business. A "pirate" is one who simply re-records the original work.

It should be clear then that the type of changes involved in this case (or any changes made by the re-recorder) have no bearing on the question of infringement as posed by § 1(f) and its provisos. So long as the allegedly infringing work is a product of re-recording, rather than an independent production, an infringement exists. The dividing line, as I read the statute, is between the re-recorder (even with changes) and the imitator or simulator who stages his own independent production.

■ Defendants suggested that the copyright doctrine of "substantial similarity" has some applicability to this question. They sought to have the Court include in the instructions a requirement that the jury find substantial similarity before it could find a criminal infringement. The Court disagreed with that contention. The doctrine of substantial similarity is one which the finder of fact in the standard copyright case must find in reaching the conclusion that one work infringes another. In those cases, proof of actual copying is virtually never available. Nimmer, § 141.2, fn. 26–27 and accompanying text. Substantial

similarity coupled with "access" allows the finder of fact to infer that copying has taken place. In this case, no such inference or indirect proof is necessary. The testimony of the FBI expert, the testimony of other percipient witnesses and the testimony of Defendant Richard Taxe indicate conclusively that the allegedly infringing works were made by a process of re-recording. Hence, in this case no finding of substantial similarity is necessary. Were one necessary, it would appear that the finding of re-recording, necessary to find a violation of § 1(f), would in and of itself be a finding of "fragmented literal similarity". Nimmer, § 143.12.

In a civil case, which squarely raised this issue, I would be tempted to stop right here and hold that no finding beyond re-recording under § 1(f) is necessary to a finding of infringement. However, in a criminal case, statutes are to be construed narrowly, and this argument by Defendants raises two interesting questions. First, whether the most trivial re-recording (the re-recording of one or two notes) would be an infringement, and second, whether re-recording combined with such comprehensive changes that the work is no longer recognizable as the original work (i. e., extreme speed changes or running the recording in reverse) would constitute an infringement. Quite obviously, neither of these types of final products are the types which Congress intended to reach in the Sound Recording Amendment. For purposes of this case, the Court did not need to decide whether such works are nevertheless covered by § 1(f). The trivial re-recordings might very well be held to be such an insubstantial taking as to not infringe. Nimmer, § 143.1 at fn. 62. The comprehensive changes do not fit neatly into any such doctrine but might nevertheless be held to be so far from what Congress intended to prohibit as to not constitute an infringement. In any case, this matter is not raised by the changes involved in this case. The jury instructions in this case required a finding that there

be a re-recording of "more than a trivial part of the copyrighted record", and that the final product be "recognizable" as the same performance as recorded in the original. For purposes of this case and in construing this statute in a criminal context as narrowly as possible, those instructions appear to limit coverage of § 1(f) for purposes of this case to its core meaning.

## COURT'S INSTRUCTION ON COPYRIGHT INFRINGEMENT

### (A) STATUTORY PROVISIONS:

Count 1 charges a conspiracy to commit the offense of infringing certain provisions of the copyright law of the United States with respect to sound recordings. Counts 2 through 21, inclusive, charge specific infringements of said copyright law with respect to specific sound recordings. It is, therefore, appropriate to go over with you the relevant and applicable provisions of the copyright law with respect to sound recordings which provisions are involved in this case.

As I told you earlier, prior to February 15, 1972, although the composer of the music and lyrics of a song could copyright those, if that song was performed in a sound recording, the recording was not copyrightable. That was changed by some amendments to the copyright law, passed in late 1971, which became effective February 15, 1972.

Since that time, under the provisions of Title 17 U.S.C. § 5, sound recordings may be validly copyrighted if the person so doing registers his copyright in accordance with all of the requirements of the law and if the fixation date was in accordance with further statutory sections that I will discuss with you.

Among other provisions in the copyright law is a requirement of Title 17 U.S.C. § 19 requiring a notice of copyright to be placed upon the copyrighted work. For sound recordings, such notice is prescribed as consisting of the letter "P" in a circle.

Certain copyright infringements, including infringements of valid sound recording copyrights, are made criminal by Title 17 U.S.C. § 104, which provides in pertinent part as follows:

"Any person who willfully and for profit shall infringe any copyright secured by this title . . . shall be [guilty of an offense against the United States]."

Thus, the infringement must be willful and for profit. I will give you more detailed instruction on the elements of the offense of infringement a little later on.

The section of the Copyright Act which is principally in issue in this case is 17 U.S.C., subsection 1(f), which subsection was added in the legislation effective February 15, 1972. Title 17 U.S.C. § 1(f) reads as follows:

§ 1: " . . . any person . . . complying with the provisions of this title . . . shall have the exclusive right . . .

"(f) To reproduce and distribute to the public . . . reproductions of the copyrighted work if it be a sound recording: *Provided,* That the exclusive right of the woner of a copyright in a sound recording to reproduce it is limited to the right to duplicate the sound recording in a tangible form that directly or indirectly recaptures the actual sounds fixed in the recording: *Provided further,* That this right does not extend to the making or duplication of another sound recording that is an independent fixation of other sounds, even though such sounds imitate or simulate those in the copyrighted sound recording . . ."

Let me break that down for you and analyze it, part by part.

The basic language in the beginning of subsection (f) says that one shall have the exclusive right "to reproduce and distribute to the public . . . reproductions of the copyrighted work if it be a sound recording." This provides for the copyrightability of sound recordings and gives to the owner of such copyright one of the normal and usual

rights flowing from copyright, i. e., the exclusive right to reproduce and distribute to the public the copyrighted sound recording.

■ Then comes which I call the first proviso. It reads:

*"Provided,* That the exclusive right of the owner of a copyright in a sound recording to reproduce it is limited to the right to duplicate the sound recording in a tangible form that directly or indirectly recaptures the actual sounds fixed in the recording".

This says in essence that the exclusive right to reproduce and distribute the sound recording has limitations. It is limited to the right to duplicate the sound recording in a form that recaptures the actual sounds fixed in the recording.

Next comes the second proviso, which reads:

*"Provided further,* That this right does not extend to the making or duplication of another sound recording that is an independent fixation of other sounds, even though such sounds imitate or simulate those in the copyrighted sound recording . . . "

The second proviso explains and amplifies the first proviso which, as I have said, limits the exclusive rights granted to copyright holders of sound recordings. The second proviso says in essence that the copyright of sound recordings does not extend to another and different sound recording that is an independent fixation of other sounds, even though such other sounds imitate or simulate those in the copyrighted sound recording. In other words, persons other than the copyright holder, are free to imitate or simulate the copyrighted sound recording if there is an independent fixation of other sounds. And the holder of the copyright cannot claim his copyright extends to another later performance that even he, himself, may make with the very same artists of the very same work because that later performance would be an independent fixation of other sounds. If he wished to and could meet the other requirements of the law, he could separately copyright his later performance but he could not claim that his earlier copyright covered it.

Let me stop to define certain words right now.

For the purpose of this statute, "imitate" and "simulate" mean the same thing and the word "imitate" is in common use. If you get the same or other musicians to perform a number which had previously been performed, and they now perform it as closely as they could get to the previous performance, it would be an imitation or simulation. What is "infringement?" When someone other than the copyright holder does an act which is the exclusive right of the copyright holder, he infringes.

A valid copyright is a necessary requisite to infringement. A necessary requisite to a valid copyright of a sound recording is the date of fixation. There can be no infringement unless the work infringed had a date of fixation after February 15, 1972. "Date of fixation" means the date on which the work claimed to have been infringed was first embodied in a final master recording from which copies are later made. In this case, we are dealing with tapes on which are many songs. Not every song on every tape is in issue. There can be an infringement of only one song on a tape. The entire tape may be copyrighted but the protection of the copyright, i. e., the exclusive right to reproduction, can be considered as applying separately to the individual songs. If you find as to a given tape which consists of several songs that one or more of such songs had a date of fixation in a master recording on or after February 15, 1972, and that such song was infringed, the infringement is complete and it is irrelevant that other songs on the same tape have dates of fixation before February 15, 1972.

■ There are in evidence certificates of copyright for each of the tapes in issue. Those certificates are prima

facie evidence of the validity of the copyright. They are also prima facie evidence of the date of fixation of each song as disclosed and listed in said certificate. "Prima facie" means evidence upon which an affirmative finding to that effect can be based without any other evidence thereof. Of course, any contrary evidence may be considered as on the question of whether such a finding should be made and the prima facie evidence may itself be disbelieved.

You will remember my discussion of the second proviso. It, too, uses the word "fixation". As I told you, it amplifies and clarifies the limits of the rights held by the copyright holder of sound recordings. The second proviso says that his exclusive right does not extend to the making (and here I quote) "of another sound recording that is an independent fixation of other sounds, even though such sounds imitate or simulate those in the copyrighted sound recording." (close quote) "Fixation" means the same thing as I have previously said, embodiment in a master recording. But note that the statutory term is "independent fixation of other sounds." There is an independent fixation of other sounds when there is a new performance, even one which imitates or simulates the previous one. Note the term "other sounds". The statute does not authorize anyone to make a fixation of the same sounds which are the subject of the copyright. A new fixation which involves a re-recording of the copyrighted fixation, even with changes as I will discuss with you soon, is not an independent fixation within the meaning of the second proviso and thus would constitute an infringement.

Let us now talk about changes, since that is one of the major issues of this case. As I previously told you, before February 15, 1972, since a sound recording could not be copyrighted, one could reproduce or copy, identically or with changes, any record or tape already on the market without violating any copyright on that recording. It was necessary only to pay the holder of the copyright on the words and music a royalty of 2¢ per record.

Under the new law, to determine whether an infringement has occurred, or a conspiracy to infringe has occurred, one must examine the accused sound recording and compare it to the copyrighted one. Assuming a valid copyright to exist, to find infringement, you must find that the accused recording duplicates the copyrighted one by recapturing the actual sounds fixed in the copyrighted record. In other words, you must find a re-recording. No infringement would exist if the alleged infringer hired other artists or even the very same artists to perform the very same arrangement and the resultant second recording was indistinguishable from the copyrighted recording, even to a trained ear. There would be no recapturing of the actual sounds in the second recording in such a case. To constitute an infringement, there must be a re-recording of more than a trivial part of the copyrighted recording.

Now, what about changes? An infringement which recaptures the actual sounds by re-recording remains an infringement even if the re-recorder makes changes in the speed or tone of the original or adds other sounds or deletes certain frequencies, unless his final product is no longer recognizable as the same performance.

To summarize, to find a willful infringement for profit, as made criminally punishable by 17 U.S.C. § 104, the following elements are required to be found:

First, that the sound recording allegedly infringed was validly copyrighted. In order to so find, you must find that the sounds on that recording allegedly infringed had a fixation date of on or after February 15, 1972.

Second, that the Defendant infringed the copyrighted recording as I have defined the arrangement.

Third, that in infringing, the Defendant acted willfully.

Fourth, that the act of infringement by Defendant was for profit.

"Profit" includes the sale or exchange of the infringing work for something for value in the hope of some pecuniary gain. It is irrelevant whether the hope of gain was realized or not. The requirement of profit is intended to delineate commercial infringements from infringements for merely personal use and philanthropic infringements.