**UNITED STATES of America, Plaintiff,**

v.

**Dennis MORAN, Defendant.**

**No. CR 90-0-106.**

United States District Court,
D. Nebraska.

Feb. 15, 1991.

Michael P. Norris, Asst. U.S. Atty., Omaha, Neb., for U.S.

Richard J. Dinsmore, Omaha, Neb., for Dennis Moran.

### MEMORANDUM AND ORDER

RICHARD G. KOPF, United States Magistrate Judge.

The parties have consented to try this misdemeanor case before me. Trial was held on January 15, 1991, and briefs were received on January 23, 1991. I now find that the defendant is not guilty of the alleged willful infringement of a copyrighted video cassette in violation of 17 U.S.C. § 506(a).

## I. FACTS

Dennis Moran (Moran), the defendant, is a full-time Omaha, Nebraska, police officer and the owner of a "mom-and-pop" movie rental business which rents video cassettes of copyrighted motion pictures to the public. On April 14, 1989, agents of the Federal Bureau of Investigation (FBI) executed a court-ordered search warrant on the premises of Moran's business. The FBI seized various video cassettes appearing to be unauthorized copies of copyrighted motion pictures, including "Bat 21," "Big," "Crocodile Dundee II," "The Fourth Protocol," "Hell–Bound: Hellraiser II," and "Mystic Pizza." The parties have stipulated that these six motion pictures are validly copyrighted motion pictures. The parties have further stipulated that each of the six motion pictures was distributed to Moran, with the permission of the copyright holder, between February 1, 1989, and April 14, 1989. The parties have further stipulated that at least one of the movies identified was reproduced by Moran onto a video cassette, without the authorization of the copyright holder, placed into inventory for rental, and subsequently rented.

At the time the FBI executed the search warrant, Moran was fully cooperative. He told the FBI agents he put the "duped" copies out for rental and held the "originals" back because he feared the "original" motion pictures would be stolen or damaged. Moran told the FBI agents at the time they executed the warrant that he believed this practice was legal as long as he had purchased and was in possession of the "original" motion picture. Moran further advised the FBI agents that he would affix to the "duped" copies title labels for the copyrighted motion pictures and a copy of the FBI copyright warning label commonly found on video cassette tapes. Mor-

an advised the FBI agents that he put the title labels and FBI warning on the tapes to stop customers from stealing or duplicating the tapes.

Moran testified at trial. He indicated that he had been employed as an Omaha, Nebraska, police officer for approximately twenty-two-and-a-half years, including service as a narcotics investigator and as a bodyguard to the mayor of the City of Omaha. Moran has a reputation for honesty among his associates.

Moran testified that he began to "insure" copyrighted video cassettes, meaning that he duplicated copyrighted video cassettes which he had validly purchased from distributors, when he realized copyrighted tapes were being vandalized. Moran testified he was under the impression that "insuring" tapes was legal whereas "pirating" tapes was not. For practical purposes, Moran defined "insuring" versus "pirating" as meaning that he could duplicate a copyrighted tape provided he had purchased the copyrighted tape and did not endeavor to rent both the copyrighted tape and the duplicate he had made. Moran testified that he formulated his belief about "insuring" versus "pirating" when talking with various colleagues in the business and from reading trade publications. However, Moran was not able to specifically identify the source of his information.

There was no persuasive evidence that Moran made multiple copies of each authorized version of the copyrighted material. The evidence indicates that Moran purchased more than one copyrighted tape of the same movie, but the persuasive evidence also reveals that Moran made only one copy of each copyrighted tape he purchased. There was no persuasive evidence that Moran endeavored to rent both the copyrighted tape and the duplicate. When Moran made the unauthorized copy, he put the unauthorized copy in a package made to resemble as closely as possible the package containing the original copyrighted motion picture Moran had purchased from an authorized distributor.

## II. LAW

Moran makes two arguments. First, Moran argues that the government must prove that he had the specific intent to violate the law, that is, he knew that what he was doing was illegal and he committed the act nevertheless. Secondly, Moran argues that he did not have the specific intent to violate the law and, as a consequence, should be found not guilty.

In pertinent part 17 U.S.C. § 506(a) punishes as a criminal any "person who infringes a copyright willfully and for purposes of commercial advantage or private financial gain." Pursuant to 17 U.S.C. § 106(3), the owner of a copyright has the exclusive right to "distribute copies ... of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." The "exclusive right" of the owner of a copyright is subject to a variety of exceptions. *See* 17 U.S.C. §§ 107–118.

### A.

■ It must first be determined whether the word "willfully," as used in 17 U.S.C. § 506(a), requires a showing of "bad purpose" or "evil motive" in the sense that there was an "intentional violation of a known legal duty." Adopting the research of the Motion Picture Association of America, the government argues that the term "willful" means only "an intent to copy and not to infringe." Letter Brief of Government at 4 (citing *United States v. Backer,* 134 F.2d 533, 535 (2nd Cir.1943); *United States v. Taxe,* 380 F.Supp. 1010 (C.D.Cal. 1974), *aff'd,* 540 F.2d 961 (9th Cir.1976)). On the other hand, Moran argues that the use of the word "willful" implies the kind of specific intent required to be proven in federal tax cases, which is to say, a voluntary, intentional violation of a known legal duty. Defendant's Memorandum Brief at 1 (citing *United States v. Cross,* 816 F.2d 297, 300–01 (7th Cir.1987); *United States v. Heilman,* 614 F.2d 1133, 1137–38 (7th Cir.), *cert. denied,* 447 U.S. 922, 100 S.Ct. 3014, 65 L.Ed.2d 1114 (1980); *United States v. Wise,* 550 F.2d 1180, 1194 (9th

Cir.), *cert. denied,* 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290 (1977)).

The general rule is, of course, that ignorance of the law or mistake of the law is no defense to a criminal prosecution. However, when the term "willfully" is used in complex statutory schemes, such as federal criminal tax statutes, the term "willfull" means a "voluntary, intentional violation of a known legal duty." *Cheek v. United States,* ——— U.S. ———, 111 S.Ct. 604, 610, 112 L.Ed.2d 617 (1991) (holding in a criminal tax prosecution that a good faith misunderstanding of the law or a good faith belief that one is not violating the law negates willfulness, whether or not the claimed belief or misunderstanding is objectively reasonable).[1] As the Court recognized in *Cheek, id.* at ———, 111 S.Ct. at 609–611, in *United States v. Murdock,* 290 U.S. 389, 396, 54 S.Ct. 223, 226, 78 L.Ed. 381 (1933), the Supreme Court said that:

> Congress did not intend that a person, by reason of a bona fide misunderstanding as to his liability for the tax, as to his duty to make a return, or as to the adequacy of the records he maintained, should become a criminal by his mere failure to measure up to the prescribed standard of conduct.

This was evidently so because "[t]he proliferation of statutes and regulations has sometimes made it difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the tax law." *Cheek,* ——— U.S. at ———, 111 S.Ct. at 609.

Apparently no case has compared and analyzed the competing arguments, i.e., whether the word "willfully" requires either a showing of specific intent, as suggested by Moran, or the more generalized intent suggested by the government. Indeed, a leading text writer acknowledges that there are two divergent lines of cases, one of which requires specific intent and

another which does not. 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright,* § 15.01 at 15–5 n. 13 (1990) (hereinafter *Nimmer* ). As pointed out by the government, some courts have suggested that "willful" only means an intent to copy, not to infringe. *Backer,* 134 F.2d at 535; *Taxe,* 380 F.Supp. at 1017. On the other hand, as suggested by Moran, other courts have seemingly required evidence of specific intent. *Heilman,* 614 F.2d at 1137–38; *Wise,* 550 F.2d at 1194. At least two courts have specifically approved jury instructions essentially stating that an act of infringement done "willfully" means an act voluntarily and purposely done with specific intent to do that which the law forbids, that is to say, with bad purpose either to disobey or disregard the law. *Cross,* 816 F.2d at 300–01; *United States v. Rose,* 149 U.S.P.Q. 820 (S.D.N.Y.1966) (quoted in *Nimmer, supra,* § 15.01 at 15–6 n. 13). None of the cases recognize that there are divergent lines of cases on this point, and none of the cases endeavor to explain why one line of cases is more compelling than the other.

I am persuaded that under 17 U.S.C. § 506(a) "willfully" means that in order to be criminal the infringement must have been a "voluntary, intentional violation of a known legal duty." *Cheek,* ——— U.S. at ———, 111 S.Ct. at 610. I am so persuaded because I believe that in using the word "willful" Congress intended to soften the impact of the common-law presumption that ignorance of the law or mistake of the law is no defense to a criminal prosecution by making specific intent to violate the law an element of federal criminal copyright offenses. I came to this conclusion after examining the use of the word "willful" in the civil copyright infringement context and applying that use to the criminal statute.[2] *Wise,* 550 F.2d at 1188 n. 14 (There is

---

1. In other circumstances, the Supreme Court has also derived from the word "willfully" a requirement of specific intent. *Screws v. United States,* 325 U.S. 91, 101, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495 (1945) (construing 18 U.S.C. § 242, dealing with violations of civil rights, as requiring specific intent in a federal criminal prosecution of local law enforcement officers who ar-

rested a black for a state offense and then wrongfully beat him to death).

2. The legislative history regarding the use of the word "willful" in the statutes criminalizing copyright infringement is not helpful. It has been a criminal offense to willfully infringe a copyright for profit since at least 1909. Copy-

a general principle in copyright law of looking to civil authority for guidance in criminal cases).

In the civil context there is "strict liability" for infringement, even where the infringement was "innocent." *United States v. Bily,* 406 F.Supp. 726, 733 (E.D.Pa.1975) (comparing civil and criminal copyright law). In this connection, a plaintiff in a civil case need not prove actual damages, but rather may seek what are called statutory damages. The term "willful" is used in the context of statutory damages, and it is instructive to compare the definition of the term "willful," as used in the civil context regarding statutory damages, with the definition of the term "willful" used in the criminal context.

In the statutory damage context, a civil plaintiff is generally entitled to recover no less than $250.00 nor more than $10,000.00 per act of infringement. 17 U.S.C. § 504(c)(1). But where the infringement is committed "willfully," the court in its discretion may increase the award of statutory damages up to a maximum of $50,-000.00 per act of infringement. 17 U.S.C. § 504(c)(2). On the other hand, in the case of "innocent infringement," if the defendant sustains the burden of proving he/she was not aware, and had no reason to believe, that his/her acts constituted an infringement of the copyright, and the court so finds, the court may in its discretion reduce the applicable minimum to $100.00 per act of infringement. 17 U.S.C. § 504(c)(2). *See* H.R.Rep. No. 1476, 94th Cong., 2d Sess. at 162–163, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5778–79.

As noted text writers have concluded, the meaning of the term "willful," used in 17 U.S.C. § 504, must mean that the infringement was with knowledge that the defendant's conduct constituted copyright infringement. *Nimmer, supra* p. 6,

§ 14.04[B][3] at 14–40.3–14–40.4 (citations omitted). Otherwise, there would be no point in providing specially for the reduction of awards to the $100.00 level in the case of "innocent" infringement since any infringement which was nonwillful would necessarily be innocent.

The circuit courts of appeal which have considered the issue have all adopted *Nimmer's* formulation with regard to the meaning of the word "willful" for purposes of 17 U.S.C. § 504(c)(2) and statutory civil damages. *Cable/Home Communication v. Network Productions,* 902 F.2d 829, 851 (11th Cir.1990); *Broadcast Music, Inc. v. Xanthas, Inc.,* 855 F.2d 233, 236 (5th Cir. 1988); *RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.,* 845 F.2d 773, 779 (8th Cir.1988); *Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co., Inc.,* 807 F.2d 1110, 1115 (2d Cir.1986). In other words, the term "willful," when used in the civil statutory damage statute, has consistently been interpreted to mean that the infringement must be "with knowledge that the defendant's conduct constitutes copyright infringement." *Nimmer, supra* p. 6, § 14.04[B][3] at 14–40.3–14–40.4.

There is nothing in the text of the criminal copyright statute, the overall scheme of the copyright laws, or the legislative history to suggest that Congress intended the word "willful," when used in the criminal statute, to mean simply, as the government suggests, an intent to copy. Rather, since Congress used "willful" in the civil damage copyright context to mean that the infringement must take place with the defendant being knowledgeable that his/her conduct constituted copyright infringement, there is no compelling reason to adopt a less stringent requirement in the criminal copyright context. Accordingly, I find that "willfully," when used in 17 U.S.C. § 506(a), means a "voluntary, intentional

---

right Act of 1909, ch. 320, 35 Stat. 1082 at § 28. With the exception of inserting the phrase "for purposes of commercial advantage or private financial gain" for the word "profit," a change thought not to be material, *Nimmer, supra* p. 6, § 15.01 at 15–1 n. 1, the present statute is nearly identical to the 1909 statute. 17 U.S.C. § 506(a)

(1976). The legislative history of the 1976 revision of the criminal statute does not explain what Congress meant by the use of the word "willful." H.R.Rep. No. 1476, 94th Cong., 2d Sess. at 163–164, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5779–80.

violation of a known legal duty." [3] *Cheek*, —— U.S. at ——, 111 S.Ct. at 610.

## B.

■■■ Having determined that the standard enunciated by the Supreme Court in *Cheek*, —— U.S. ——, 111 S.Ct. 604, applies, it is important to recognize that the rule does not require that a defendant's belief that his conduct is lawful be judged by an objective standard. Rather, the test is whether Moran truly believed that the copyright laws did not prohibit him from making one copy of a video cassette he had purchased in order to "insure" against vandalism. In other words, the test is not whether Moran's view was objectively reasonable, but rather, whether Moran truly believed that the law did not proscribe his conduct. *Cheek*, —— U.S. ——, 111 S.Ct. at ——. Of course, the more unreasonable the asserted belief or misunderstanding, the more likely it is that the finder of fact will consider the asserted belief or misunderstanding to be nothing more than simple disagreement with known legal duties imposed by the law, and will find that the government has carried its burden of proving knowledge. *Id.* at ——, 111 S.Ct. at ——.

Most of the government's argument that it proved beyond a reasonable doubt that Moran violated the criminal copyright statute, even if the word "willfully" is defined as Moran suggests, is based upon the assumption that Moran's beliefs must be "objectively" reasonable. As indicated above, Moran's beliefs need not have been objectively reasonable; rather, if Moran truly believed that he was not subject to the copyright laws, then his subjective belief would defeat a finding that he "willfully" violated the statute.

First, I note that I had an opportunity to observe Moran when he testified. Moran struck me as an honest, albeit naive, person. I was left with the definite impression that Moran was befuddled and bewildered by the criminal prosecution.

Second, although Moran is a local police officer of long standing, there is nothing in his background to suggest any particular sophistication about business matters, and there is no evidence to suggest that he has any particular knowledge about the intricacies of the copyright laws. When confronted by FBI agents upon the execution of the search warrant, Moran was entirely cooperative. On the day the search warrant was executed, he told his story in the same way he now tells his story.

Third, Moran said he had heard from others and read in various publications that it was legally appropriate to engage in the practice he called "insuring." Moran could not cite the specific source of his information. In this regard, I note that the copyright laws permit libraries and archives to replace a copyrighted article that is damaged, deteriorated, lost, or stolen, if the library or archives have, after reasonable effort, determined that an unused replacement cannot be obtained at a fair price. 17 U.S.C. § 108(c). While Moran obviously did not operate his business as a library or archives, the government's assertion that the practice of "insuring" is patently unreasonable is belied by the recognition that under certain circumstances certain users of copyrighted materials may lawfully engage in copying activity which is similar to Moran's conduct.

Fourth, Moran testified that he made only one copy of the original motion picture purchased from the authorized distributor. The government doubts his testimony, but offers no persuasive evidence to contradict

---

3. The *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit*, Instruction 7.02 at 291 (1989 Revised Edition) (West 1990) (hereinafter *Manual*), suggests that no instructions are recommended regarding the term "willfully" except in criminal tax cases and odometer fraud cases. The reason for this suggestion is that in most cases, as the *Manual* suggests, the words "voluntarily and intentionally" replace the word "willfully." *Id.* The Man-

ual recognizes that in tax cases and odometer fraud cases "willfully" should be defined as, "An act is done 'willfully' if done voluntarily and intentionally with the purpose of violating a known legal duty." *Id.* (citations omitted). However, as the committee comments to the *Manual* suggest, there may be other statutes in which "willfully" requires specific intent. *Id.* This is one of those cases.

it. Moreover, Moran testified that he never rented both the original copyrighted version of the video cassette purchased from the authorized distributor and the copy he made. Instead, he testified that he always held back the original motion picture. Once again, the government doubts this testimony in its brief, but offers no persuasive evidence to the contrary. Furthermore, the evidence indicates that Moran purchased more than one authorized cassette of a particular motion picture, but made only one duplicate for each authorized cassette purchased.

This evidence suggests that Moran was not acting with a willful intention to violate the copyright laws because if he had such an intention it would make absolutely no sense to purchase multiple authorized video cassettes and then make only one duplicate of each authorized cassette. It would have been far simpler, and certainly more lucrative, for Moran to purchase one authorized cassette of a particular motion picture and make multiple copies from the authorized version. In this way Moran would have had to pay only one fee. The fact that Moran seems to have consistently followed the practice of buying an authorized version, but making only one copy of it, suggests that he was acting in accordance with his belief that to duplicate an authorized version in order to "insure it" was lawful so long as only one copy was made and the authorized version and copy were not both rented.

Fifth, the government argues that Moran must have known that what he was doing constituted a copyright infringement because he had before him the FBI warning label and in fact affixed such labels to the unauthorized copies he made. In pertinent part, the FBI warning states, "Federal law provides severe civil and criminal penalties for the *unauthorized* reproduction, distribution or exhibition of copyrighted motion pictures and video tapes" (emphasis added). Moran explained that he thought these warning labels applied to the renting public, not to him. The use of the word "unauthorized" on the warning label suggested

to Moran that vendors who had purchased an authorized version were not subject to the legal restrictions expressed in the warning to the extent that the practice of "insuring" was legal. As Moran suggests, the FBI warning label does not specifically address the claim of legality professed by Moran. Accordingly, Moran's failure to heed the warning label is not determinative.

Sixth, the government further argues that Moran's effort to place the unauthorized copy into a video cassette package displaying a label on its spine and an FBI warning label suggests a sinister motivation. I disagree. Moran's testimony, as I understood it, indicated that when he made a copy he endeavored to make the duplicate look like the original in all respects. After all, the whole purpose of the practice of "insuring" was to use the unauthorized copy in lieu of the original when renting to the public. It was perfectly consistent with Moran's view of the law to make the unauthorized copy look as nearly as possible like the authorized version.

In summary, when Moran's actions were viewed from the totality of the circumstances, the government failed to convince me beyond a reasonable doubt that Moran acted willfully. Moran is a long-time street cop who was fully cooperative with law enforcement authorities. He is obviously not sophisticated and, at least from the record, his business operation of renting movies to the public was not large or sophisticated. Rather, Moran's business appears to have been of the "mom-and-pop" variety. Moran's practice of "insuring," while obviously shifting the risk of loss from Moran to the copyright holder, was conducted in such a way as not to maximize profits, which one assumes would have been his purpose if he had acted willfully. For example, Moran purchased multiple authorized copies of the same movie, but he made only one unauthorized copy for each authorized version purchased. This suggests that Moran truly believed that what he was doing was in fact legal. I therefore find Moran not guilty.[4]

---

**4.** At the close of the government's case, Moran moved for judgment of acquittal. I took his

IT IS ORDERED that the Clerk of the United States District Court for the District of Nebraska shall, pursuant to Federal Rule of Criminal Procedure 32(b)(1), enter judgment in favor of the defendant, Dennis Moran, and against the United States of America on the court's finding that the defendant is not guilty.

motion under advisement. Moran then offered evidence. Based upon the evidence submitted by the government and the evidence submitted by Moran, I find Moran not guilty in my capacity as a finder of fact. Therefore, I need not rule, and do not decide, whether the motion for acquittal should have been granted.